The UNITED STATES
v.
Saul M. KOHN, Defendant.

No. 73 CR 364.

United States District Court,
E. D. New York.

Nov. 12, 1973.

**1032**

Robert A. Morse, U. S. Atty., E.D.N. Y., by Howard J. Stechel, Asst. U. S. Atty., for plaintiff.

Aaron R. Schacher, Brooklyn, N. Y., for defendant.

## MEMORANDUM DECISION

COSTANTINO, District Judge.

This is a criminal prosecution charging defendant Saul M. Kohn with aiding and abetting the importation of hashish, in violation of 21 U.S.C. §§ 952(a), 960 (a)(1) (1971) and 18 U.S.C. § 2 (1971) (count one); aiding and abetting the possession of hashish on board an aircraft arriving in the United States, in violation of 21 U.S.C. §§ 955, 960(a) (2) (1971) and 18 U.S.C. § 2 (1971) (count two); knowingly and intentionally possessing hashish with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (1971) (count three); and

conspiracy to import hashish into the United States in violation of 21 U.S.C. §§ 952(a), 963 (1971) (count four). On June 26, 1973 a hearing was held to determine the disposition of defendant's motion to suppress approximately thirteen pounds of hashish and other articles seized in defendant's apartment by Customs agents on February 8, 1973. Except for the hashish found on a table in the living room and in a closet the motion was granted. Leave was given defendant to renew his motion with regard to the hashish at the conclusion of the trial and submit briefs in its support. Defendant waived a jury trial and the case was tried to the court on June 27 and June 29, 1973. With the agreement of the parties the transcript of the suppression hearing was offered and accepted into evidence at the trial.

The following are the facts adduced at the trial. On February 8, 1973 at about 3:30 p. m. Trevor A. Walters, a British subject, arrived at John F. Kennedy International Airport from Tangiers, Morocco. While going through customs a false bottom to his suitcase was discovered and approximately thirteen pounds of hashish was found. Walters was immediately arrested and questioned by Customs Inspectors. He stated that he had been given a slip of paper along with the hashish in Tangiers and that the paper contained the name, address and phone number of Saul M. Kohn. He further testified that he had been instructed to deliver the hashish to Kohn and that Kohn would pay him $2,000 upon delivery. Customs agents drove Walters to their Manhattan office and at approximately 8:00 p. m. Walters dialed the number given him in Morocco. Defendant answered and the conversation was recorded by the agents. All it related was that Walters should go to Kohn's apartment. The conversation indicated that while Kohn and Walters had met previously (later testimony revealed two years earlier), they did not know each other well.

At approximately 9:30 p. m. five agents drove Walters with the suitcase

containing the hashish to Kohn's address. Two agents entered the building with Walters and instructed him to leave the suitcase with Kohn, as he originally had intended to do. While they remained hidden in the hallway, Walters was admitted into the apartment. He had a short, general conversation with Kohn about his trip, and then gave Kohn the suitcase. Walters testified that the suitcase had been opened in his presence, that it contained the hashish, that he had asked Kohn if Kohn would sell the hashish, and that Kohn answered "maybe." Walters then left the apartment, went to the agents, and told them that Kohn was there and that he had left the suitcase with Kohn.

After remaining outside Kohn's apartment for approximately ten minutes, during which time they observed no one entering or leaving, the five Customs agents knocked on the door, and, after identifying themselves, were admitted. As he entered the foyer, Agent Walsh, the first officer to enter the apartment, arrested Kohn for "violating federal narcotics law." No guns were drawn or shown and the entire arrest was peaceably carried out. Walsh advised Kohn of his constitutional rights as they apparently proceeded down a foyer into Kohn's living room. Walsh testified that Kohn said that he understood, saying, "I know what you are talking about." Agent Czujak testified that Kohn said, "Yes, yes, I know my rights. I know the law."

When Walsh and the other agents entered the living room they noticed a small amount of hashish on a table. Asked if it were his, Kohn said yes. The agents testified that Kohn was quite agitated by the intrusion and delivered a fifteen minute speech about how wrong the laws were. After he calmed down, he was asked by Agents Walsh and Greico where the bag was. He immediately asked the agents if they had a search warrant. Agent Greico said they did not, but explained that the agents had the "right" to get one, and that since it was so late they would have

to "secure" the premises, leave a guard, and return with a warrant in the morning. Greico was asked on cross-examination at trial whether he would have gotten a search warrant had Kohn insisted. He answered, "That would be my only recourse." Agent Walsh testified that Kohn then replied, "Well go ahead, do what you want to do." Agent Czujak recalled at trial that Kohn said, "I don't care what you do, just do what you have to do." Similarly, Agent Greico testified that although he could not remember Kohn's exact words, he recalled that "whatever he did say indicated to me that I had, or we had permission to search the apartment." Walsh again asked Kohn where the suitcase was and Kohn pointed to the closet saying, "The bag is in the closet." The suitcase was found in the closet and it contained the hashish.

■ Defendant asserts that the search of the closet and the seizure of the suitcase, the hashish in the suitcase, and the hashish on the table were illegal. It is clear that the agents had probable cause to arrest defendant and defendant has never questioned this. They knew defendant had in his possession a suitcase containing a substantial amount of hashish. The hashish on the living room table was in plain view of the agents at the time of the arrest and was therefore properly seized. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

■ The government contends that the search of the closet and the seizure of the suitcase although warrantless were not illegal because the defendant freely and voluntarily consented to them. A search pursuant to a voluntary consent is constitutionally permissible, Vale v. Louisiana, 399 U.S. 30, 35, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); Katz v. United States, 389 U.S. 347, 358, 88 S. Ct. 507, 19 L.Ed.2d 576 (1967), but to sustain a consent search the government has the burden of proving that the consent was "freely and voluntarily" given. Bumper v. North Carolina, 391 U.S. 543,

548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

■ The uncontradicted testimony of Agents Walsh, Czujak and Greico concerning defendant's words of consent, coupled with his actions, clearly indicate that Kohn did, in fact, consent. All three agents inferred from Kohn's words that permission to search was being given. More importantly, not only did Kohn not protest the ensuing search, he aided it by pointing to the closet where the suitcase was saying, "The bag is in the closet." The inescapable conclusion must be that while the words as set down in black and white may appear equivocal, their meaning at the time was crystal clear to all present. Had Kohn not meant that the agents were free to search, surely he would have protested. He had previously demonstrated no reticence about speaking his mind to the agents.

■ Defendant asserts that the consent, if given was not "freely" given, arguing that custody is "inherently coercive" and citing Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1965). It is true that the government is under a "particularly heavy" burden to show voluntary consent in such circumstances, United States v. Gaines, 441 F.2d 1122, 1123 (2d Cir. 1971); Gorman v. United States, 380 F.2d 158, 163 (1st Cir. 1967). However, "[t]he mere fact that a suspect is under arrest does not negate the possibility of a voluntary consent. Neither does the suspect's knowledge that the search will almost certainly demonstrate his guilt." United States ex rel. Lundergan v. McMann, 417 F.2d 519, 521 (2d Cir. 1969).

■ The giving of Miranda warnings is not a requirement in Fourth Amendment cases, United States v. Mapp, 476 F.2d 67, 78 (2d Cir. 1973); Schneckloth v. Bustamonte, 412 U.S. 218 at 246, 93 S.Ct. 2041, but they were given here. Additionally, Kohn knew of his right to require a search warrant. He specifical-

ly asked whether the agents had a warrant and seemed to fully understand the subsequent conversation about the agents getting one.

This court, having observed the demeanor of the agents at trial, and in light of their consistent and uncontroverted testimony, gives credence to their version of what occurred on the evening of February 8, 1973. It is satisfied that the government has shown, by clear and convincing evidence, that no coercion was used to obtain Kohn's consent and that consent was freely and voluntarily given. Accordingly, defendant's motion to suppress the hashish found in the closet is denied.

■ Defendant has raised the defense of entrapment, claiming that the behavior of the government has fallen below acceptable standards. He cites Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958) and asserts that Walters was "programmed" by the government. The facts, however, in no way indicate that the criminal conduct was "the product of the creative activity" of law enforcement officials. Sherman v. United States, supra at 372, 78 S.Ct. at 821; Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L. Ed. 413 (1932). The fact that government agents aid the commission of an offense by providing facilities does not constitute entrapment. Sorrells v. United States, supra at 441, 53 S.Ct. 210. The name of Kohn had been given to Walters not by the Customs agents but by the person in Morocco who gave him the hashish. Kohn himself told Walters over the telephone to come to his apartment. The only facility that the agents provided was the transportation from the airport to Kohn's apartment. Kohn therefore has not sustained his burden of proof as to the defense of entrapment. United States v. Viviano, 437 F. 2d 295, 298 (2d Cir. 1971).

■ Upon consideration of the trial record this court finds that the evidence is insufficient to convict defendant on counts one, two and four. There is no

evidence other than the piece of paper given to Walters in Morocco linking Kohn to the importation of the hashish, and that evidence is insufficient to convict defendant on the aiding and abetting or the conspiracy to import charges. Accordingly, the defendant is found not guilty of counts one, two and four.

The evidence on count three, however, requires a different conclusion. There is no question that defendant possessed approximately thirteen pounds of hashish. The only real question is whether he possessed it with intent to distribute, as is required by 21 U.S.C. § 841(a)(1971). The testimony of Walters that Kohn said "maybe" he could sell it, in addition to the circumstances surrounding Walters' being given Kohn's name and address, and the quantity of hashish involved, all combine to prove that Kohn did intend to distribute the hashish. Walters' testimony that the supplier in Morocco gave him the hashish, Kohn's name, address and phone number, and promised him that Kohn would pay him upon delivery in New York, is circumstantial evidence that Kohn was the selling outlet for illicit drugs. The fact that Kohn invited Walters to go to his apartment after being told by Walters that he had come from Morocco, while equivocal on its face, buttresses this conclusion when considered in conjunction with the other evidence.

The quantity of hashish involved, approximately thirteen pounds, is further evidence of Kohn's intent to distribute. The court infers from the amount involved that the hashish was not to be used for his personal use, but rather was intended for distribution. United States v. Mather, 465 F.2d 1035, 1037–1038 (5th Cir. 1972), cert. denied, 409 U.S. 1085, 93 S.Ct. 685, 34 L.Ed.2d 672 (1972); United States v. Gonzalez, 442 F.2d 698, 701 (en banc) (2d Cir. 1971), cert. denied, 404 U.S. 845, 92 S.Ct. 146, 30 L.Ed.2d 81 (1971); United States v. Contreras, 446 F.2d 940 (2d Cir. 1971); Turner v. United States, 396 U.S. 398, 423, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970). In *Mather*, the Fifth Circuit, in considering 21 U.S.C. § 841(a), upheld a lower court's finding of intent to distribute based upon an inference drawn from the quantity possessed. Such an inference surely meets the test of Barnes v. United States, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973). The Supreme Court in that case held that an inference which meets the reasonable doubt standard satisfies the requirements of due process.

 The court finds that all the evidence adduced at trial supports a finding, beyond a reasonable doubt, that defendant possessed the hashish with intent to distribute. Accordingly the court finds the defendant guilty of count three of the indictment.

The foregoing opinion constitutes findings of fact and conclusions of law, in accordance with Rule 23(c) of the Federal Rules of Criminal Procedure.