UNITED STATES of America,
Plaintiff-Appellee,

v.

James Marshall LEMON,
Defendant-Appellant.

No. 76–1443.

United States Court of Appeals,
Ninth Circuit.

March 8, 1977.

Warren Williamson, Federal Defenders, Inc., argued, San Diego, Cal., for defendant-appellant.

Stephen Peterson, Asst. U. S. Atty., argued, San Diego, Cal., for plaintiff-appellee.

Before TRASK and CHOY, Circuit Judges, and EAST,* District Judge.

CHOY, Circuit Judge:

James Lemon appeals his conviction on two counts of bank robbery, 18 U.S.C. § 2113(a). He argues for reversal on the grounds that: (1) the court gave jury insanity instructions contrary to the standard established in *Wade v. United States*, 426 F.2d 64 (9th Cir. 1970) (en banc); (2) the court failed to abide by a provision of the Speedy Trial Act, 18 U.S.C. § 3164; (3) his *Miranda* rights were violated; (4) his custodial consent to a search of his hotel room was both involuntary and elicited in violation of *Miranda*; and (5) his court-appointed counsel did not provide the reasonably effective assistance of counsel required by the sixth amendment and the Criminal Justice Act, 18 U.S.C. § 3006A. We affirm.

## FACTS AND PROCEEDINGS BELOW

This action concerns two San Diego, California bank robberies which occurred on July 22 and July 25, 1975. On July 26, 1975, the San Diego Police received an anonymous telephone tip that the man depicted in published bank surveillance photos was a local gambler, Fred Forens. Acting on the call, two officers, armed with the photos, checked the areas reportedly frequented by Forens. Upon entering a local bar, the officers observed appellant, checked his identification, and asked him to step outside, where he was compared with the photos. Appellant denied he was the person shown. At that point, the officers placed him under arrest, conducted a pat-down search, and handcuffed him. During the pat-down, a key to the Knickerbocker Hotel was found, and the officers proceeded there with appellant. Upon obtaining his consent, the officers searched appellant's hotel room and found marked bills from the robbed banks as well as a shirt similar to that worn by the robber. Appellant was then taken to the police station where, for the first time, he was given his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and questioned further.

On August 6, 1975, a federal grand jury returned a three-count indictment charging appellant with two counts of bank robbery, and one count of armed robbery (later dismissed). 18 U.S.C. § 2113(a) & (d). On September 15, 1975, a hearing was held on appellant's pre-trial motion to suppress tangible evidence and statements. Appellant's trial was set for October 21, 1975. On that date, appellant's jury trial was trailed to October 23 because of two other jury trials scheduled for October 21. On October 23, appellant requested that his case be continued to November 3, 1975, when he said he would enter a plea of guilty. On that date, appellant's counsel advised the court that the case would not be disposed of, notified the government that a defense of insanity would be interposed, and asked for a future court appearance to set a trial date in order to allow the government an opportunity to obtain an expert witness. On November 17, 1975, the government requested that an out-of-town psychiatrist be permitted to examine appellant. The court granted the request and set the trial for the earliest date thereafter available, January 13, 1976.

On January 14, 1976, appellant moved to dismiss for denial of speedy trial. The motion was denied on January 20, and trial commenced on the two counts of bank robbery. Appellant was convicted of both counts on January 23, and this appeal ensued.

## JURY INSANITY INSTRUCTIONS

■ In *Wade v. United States*, 426 F.2d 64 (9th Cir. 1970) (en banc), this court approved the following jury instruction on insanity:

"A person is not responsible for criminal conduct if at the time of such conduct as

---

* The Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

a result of mental disease or defect he lacks substantial capacity either to appreciate the [wrongfulness] of his conduct or to conform his conduct to the requirements of law."

*Id.* at 71–72. This instruction is the first part of a two-part standard developed by the American Law Institute (A.L.I.) and is still the standard in this circuit. *United States v. Sullivan,* 544 F.2d 1052 (9th Cir. 1976). The second part of the A.L.I. standard reads:

"As used in this Article, the terms, 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct."

426 F.2d at 71. This latter portion was rejected by this court in *Wade, id.* at 72–73, but was included in the jury instructions given by the trial judge in the instant case at the urging of appellant's counsel. Appellant now contends that its inclusion rendered the instruction so misleading as to deny the jury the proper standard of assessment. We do not agree.

■ The instruction containing the second part of the A.L.I. standard could only have harmed appellant's case had he attempted to establish his insanity with evidence of "repeated criminal or otherwise antisocial conduct." Appellant's insanity defense, however, was based on toxic psychosis, a form of black-out which he claimed resulted from his depression-induced ingestion of large amounts of alcohol and drugs in the days before the robberies.[1] Although appellant argues that the jury may have believed that the two robberies

occurring within three days of each other were evidence of repeated criminal conduct, it was shown at trial that his record was quite good. Under these circumstances, and because the insanity instructions as a whole conveyed the proper standard, *United States v. Trejo,* 501 F.2d 138, 140 (9th Cir. 1974), the inclusion of the surplus language is not reversible error. *United States v. Martin,* 489 F.2d 674, 677 (9th Cir. 1973), *cert. denied,* 417 U.S. 948, 94 S.Ct. 3073, 41 L.Ed.2d 668 (1974).[2]

## SPEEDY TRIAL ACT

■ The Speedy Trial Act requires that a person who is continuously "held in detention solely because [he is] awaiting trial" have his "conditions of release" reviewed by the court if, "through no fault of the accused or his counsel," trial does not commence within 90 days. 18 U.S.C. § 3164. When a defendant is detained for a study of his mental competency, he is not in detention "solely" for the purpose of awaiting trial under § 3164(a)(1). *Moore v. United States,* 525 F.2d 328, 329 (9th Cir. 1975); *United States v. Bigelow,* 544 F.2d 904, 907 (6th Cir. 1976). Likewise, when a continuance is granted at the request of the defense, such a delay is the "fault of the accused or his counsel" under § 3164(c) and excludable as such from the calculation of the 90-day period. *Bigelow, supra; United States v. Martinez,* 538 F.2d 921, 923–24 (2d Cir. 1976); *United States v. Tirasso,* 532 F.2d 1298, 1299 (9th Cir. 1976) (dictum).

■ Appellant was arrested on July 26, 1975. Because § 3164 did not become effec-

---

1. Appellant does not argue that a defense of voluntary intoxication was available to him. Nor could he. For although "[i]t is clear that we follow the rule that in a prosecution for a specific intent crime, intoxication (although voluntary) which precludes the formation of the necessary intention may be established as a defense," in this circuit the first paragraph of 18 U.S.C. § 2113(a), under which Lemon was charged, "does not require proof of a specific intent." *United States v. Hartfield,* 513 F.2d 254, 259 (9th Cir. 1975), *citing United States v. Porter,* 431 F.2d 7, 10 (9th Cir.), *cert. denied,* 400 U.S. 960, 91 S.Ct. 360, 27 L.Ed.2d 269 (1970). *See United States v. Klare,* 545 F.2d 93 (9th Cir. 1976).

2. Appellant also cites the dissent in *Wade v. United States,* 426 F.2d 64, 77 (9th Cir. 1970) (en banc), for the proposition that the failure of the trial court to define the term "substantial" as used in the jury instruction may have prejudiced his case. He argues that the jury may have been confused as to the degree of lack of capacity necessary to acquit, and may have applied a stricter standard than required. Inasmuch as the *Wade* dissent advocated the upholding of the M'Naghten Rule requiring a *total* lack of capacity for acquittal, we find no merit in this contention.

tive until September 29, 1975, § 3164(a), the 90-day period must be computed from that date, § 3164(b). H.Rep.No. 93–1508, 93d Cong., 2d Sess., *reproduced in,* 4 U.S.Code Cong. & Ad.News 7401, 7416 (1974); *United States v. Cordova,* 537 F.2d 1073, 1075 & n.1 (9th Cir. 1976). On appellant's request, his case was continued from October 23, 1975 to November 3, 1975 to allow him to enter a plea of guilty. On that date, appellant did not plead guilty, but instead requested a continuance. On November 17, 1975, a further delay was granted to allow an examination of appellant's competency. Because all delays from October 23, 1975 on were attributable either to requests by appellant or to the determination of his mental competency, we hold that § 3164 was not violated.

Moreover, even if § 3164 were violated, the proper remedy under the Act would have been "review by the court of the conditions of release," § 3164(c), not the reversal which appellant here demands. *See United States v. Carpenter,* 542 F.2d 1132, 1134 (9th Cir. 1976); *United States v. Simmons,* 536 F.2d 827, 835–36 n.44 (9th Cir. 1976); *United States v. Tirasso, supra.* And appellant does not allege that his continued detention in any way prejudiced him or his defense under the sixth amendment test of *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

## *MIRANDA* VIOLATIONS

■ Appellant next contends that the statements he made to the police in response to their questions while he was in custody, but before he was given *Miranda* warnings, were improperly admitted at trial.[3] *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), requires that a defendant be informed of his rights once he is in a custodial situation. The

*Miranda* Court defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any significant way." *Miranda, supra* at 444, 86 S.Ct. at 1612 (footnote omitted).

■ Appellant clearly was in custody from the time he was placed under arrest, and any questioning thereafter violated *Miranda.* It is, however, unclear from the record which questions were in fact asked after appellant was arrested "or otherwise deprived of his freedom in any significant way." But we have no occasion here to determine precisely when appellant was questioned or placed in custody, for we do not believe that any of the statements made by him contributed in any way to his conviction and thus hold that their admission, even if in violation of *Miranda,* was harmless error beyond a reasonable doubt.[4] *Milton v. Wainwright,* 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); *Chapman v. California,* 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Casimiro-Benitez,* 533 F.2d 1121, 1124–25 (9th Cir. 1976); *United States v. Hatcher,* 496 F.2d 529, 530 (9th Cir. 1974).

## CONSENT TO SEARCH

After his arrest, appellant was taken to his hotel and was there asked if his room could be searched. He now contends that his consent to the search was not voluntary.

■ It is established that a person in custody can give voluntary consent to a search. *United States v. Watson,* 423 U.S. 411, 424–25, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); *United States v. Tolias,* 548 F.2d 277, 278 (9th Cir. 1977); *United States v. Rothman,* 492 F.2d 1260, 1265 (9th Cir. 1973); *United States v. Page,* 302 F.2d 81, 83 (9th Cir. 1962) (en banc). "[W]hether a

---

**3.** Appellant was asked questions such as where he lived and how long he had been in town.

**4.** There was more than sufficient evidence, independent of appellant's responses to these questions, to allow the jury to convict, notably: (1) appellant's fingerprints and palmprints were found at the teller's window of one of the banks robbed; (2) appellant's fingerprints were

found on a demand note given by the robber to the teller at the other bank robbed; (3) a shirt similar to that worn by the robber and bait money taken in the robbery of the second bank were found in appellant's hotel room; and (4) appellant was identified as the robber by the tellers of both banks.

consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973). The trial court found that appellant had voluntarily consented. An appellate court must review such a finding by the "clearly erroneous" standard. *United States v. Tolias, supra; United States v. Townsend,* 510 F.2d 1145, 1147 (9th Cir. 1975); *United States v. Page, supra* at 85–86. Upon reviewing all the evidence, we cannot say that the trial court's finding was clearly erroneous.

■■■ Appellant also contends that his consent to the search of his hotel room, even if voluntary, was a statement obtained in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and the evidence obtained as a result of the search were "fruits" of the illegally obtained statement and hence inadmissible under *Wong Sun v. United States,* 371 U.S. 471, 484–86, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).[5] *Wong Sun* requires the exclusion of the

tainted fruits of police conduct which abridges fourth amendment rights. *See Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). The question of whether fruits of a *Miranda* violation must be excluded has not yet been decided by the Supreme Court.[6]

■■■ A consent to a search is not the type of incriminating statement toward which the fifth amendment is directed. It is not in itself "evidence of a testimonial or communicative nature" under *Schmerber v. California,* 384 U.S. 757, 761–64, 86 S.Ct. 1826, 1830, 16 L.Ed.2d 908 (1966). *Tremayne v. Nelson,* 537 F.2d 359, 360 (9th Cir. 1976); *United States v. Faruolo,* 506 F.2d 490, 495 (2d Cir. 1974). *See also Fisher v. United States,* 425 U.S. 391, 408–14, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). Hence, because there was no questioning implicating appellant's fifth amendment rights, and therefore no violation of *Miranda,* in the elicitation of the consent, we need not decide whether the "fruits" doctrine of *Wong Sun* applies to *Miranda* violations.[7]

■■■ Moreover, even if *Miranda* be construed to apply to such a statement, we

5. It is settled that the fourth amendment itself requires only that a consent to a search be shown to have been voluntarily made. *Schneckloth v. Bustamonte,* 412 U.S. 218, 228–29, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). There is no fourth amendment prophylactic rule comparable to that of *Miranda* in the fifth amendment context. Indeed, the proposition that the fourth amendment requires that a person who is asked to consent to a search be first warned that he has a right to refuse consent and that anything found may be used against him has been categorically rejected. *Schneckloth v. Bustamonte, supra* at 231–32, 93 S.Ct. 2041; *United States v. Young,* 471 F.2d 109, 111 (7th Cir. 1972), *cert. denied,* 412 U.S. 929, 93 S.Ct. 2755, 37 L.Ed.2d 156 (1973); *United States ex rel. Combs v. LaVallee,* 417 F.2d 523, 525–26 (2d Cir. 1969), *cert. denied,* 397 U.S. 1002, 90 S.Ct. 1150, 25 L.Ed.2d 413 (1970). Whether appellant was so warned is only one factor within the totality of circumstances to be weighed in determining whether his consent was voluntary under the fourth amendment. *United States v. Heimforth,* 493 F.2d 970 (9th Cir.), *cert. denied,* 416 U.S. 908, 94 S.Ct. 1615, 40 L.Ed.2d 113 (1974).

6. In *Michigan v. Tucker,* 417 U.S. 433, 447, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974), the Supreme Court refused to decide the question, and in-

stead narrowly ruled that evidence obtained as a result of a pre-*Miranda* interrogation conducted after the defendant had received all but one of the warnings which the *Miranda* decision subsequently required could be used in a post-*Miranda* trial. *See also Fitzpatrick v. New York,* 414 U.S. 1050, 1051, 94 S.Ct. 554, 38 L.Ed.2d 338 (1973) (White, J., dissenting from denial of certiorari).

7. *Tremayne v. Nelson* can also be read as reasoning that, even if the answer "yes" to the question "may we search" is indeed "testimonial," it is not "incriminating." Since, however, the *"fruits"* of that answer clearly are incriminating, *Tremayne v. Nelson* may be assuming that *Miranda* has no "fruits" doctrine. *See also United States ex rel. Hudson v. Cannon,* 529 F.2d 890, 894–95 (7th Cir. 1976) (extending *Michigan v. Tucker, supra,* to allow the admission of fruits of all *Miranda* violations); *Null v. Wainwright,* 508 F.2d 340, 342–45 (5th Cir.), *cert. denied,* 421 U.S. 970, 95 S.Ct. 1964, 44 L.Ed.2d 459 (1975) (refusing to decide whether *Miranda* requires the exclusion of fruits in light of overwhelming evidence against defendant). *See generally* H. J. Friendly, "A Postscript on *Miranda,"* in *Benchmarks* 266, 279–82 (1967).

find no error. *Miranda* warnings are not constitutional rights in themselves, but are merely standards designed to safeguard the fifth amendment privilege against self-incrimination. *Michigan v. Tucker*, 417 U.S. 433, 443–46, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974). Statements taken in violation of *Miranda* may not be used to prove the prosecution's case at trial. 417 U.S. at 445, 94 S.Ct. 2357; *Miranda, supra* at 479, 86 S.Ct. 1602. Such evidence may, however, be used for other purposes, provided that its trustworthiness satisfies legal standards. *Harris v. New York*, 401 U.S. 222, 224, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). In the instant case, appellant's consent was introduced at the pre-trial suppression hearing to establish the validity of the search. Statements elicited prior to the giving of *Miranda* warnings may be used during a motion to suppress to show defendant's consent to a search. *United States v. Garcia*, 496 F.2d 670, 674–75 (5th Cir. 1974), *cert. denied*, 420 U.S. 960, 95 S.Ct. 1347, 43 L.Ed.2d 436 (1975).[8]

## EFFECTIVE ASSISTANCE OF COUNSEL

Finally, appellant maintains that he was denied reasonably effective assistance of counsel due to the failure of his trial counsel to effectively argue against the introduction into evidence of the statements taken in violation of *Miranda*, to request the proper insanity instruction, to object to the improper instruction that was given, and to properly seek appellant's release under the Speedy Trial Act. Appellant further contends that his trial counsel failed to adequately prepare the defense psychiatrist before trial.

■ This court, in *de Kaplany v. Enomoto*, 540 F.2d 975, 987 (9th Cir. 1976) (en banc) identified three alternate standards by which to review the performance of counsel: (1) whether counsel's performance was "so poor and incompetent as to make the trial a farce or mockery of justice"; (2) "whether the circumstances show a denial of fundamental fairness"; and (3) whether there was a "lack of effective aid in the preparation and trial of the case— lack of counsel likely to render and rendering reasonably effective assistance." None was violated here.

■ Appellant's trial counsel properly preserved an objection to the use of the statements elicited in violation of *Miranda* at the pretrial suppression hearing. Generally, following the overruling of a pretrial motion to suppress, it is unnecessary to again object when the evidence is offered at trial. *Lawn v. United States*, 355 U.S. 339, 353, 78 S.Ct. 311, 2 L.Ed. 321 (1958). Moreover, we have found that the admission of the statements into evidence clearly was harmless error.

We have also found that the insanity instruction was not misleading, and that appellant had no right to be released under the Speedy Trial Act. Even assuming that counsel's preparation of the defense psychiatrist was in some manner deficient, that fact—taken alone or in conjunction with the other alleged errors—would not convince us that appellant was denied effective assistance of counsel. *See United States v. Martin*, 489 F.2d 674, 677–78 (9th Cir. 1973), *cert. denied*, 417 U.S. 948, 94 S.Ct. 3073, 41 L.Ed.2d 668 (1974).

AFFIRMED.

**8.** Other decisions discussing this problem have, without extensive analysis, apparently assumed that the voluntariness standard governs. *See United States v. Helmforth*, 493 F.2d 970, 972 (9th Cir.), *cert. denied*, 416 U.S. 908, 94 S.Ct. 1615, 40 L.Ed.2d 113 (1974); *United States v. Kunkel*, 417 F.2d 299 (9th Cir. 1969); *Weeks v. Estelle*, 509 F.2d 760, 765–66 (5th Cir.), *cert. denied*, 423 U.S. 872, 96 S.Ct. 139, 46 L.Ed.2d 103 (1975); *United States v. Bryant*, 406 F.Supp. 635 (E.D.Mich.1975); *United States v. Kohn*, 365 F.Supp. 1031, 1034 (E.D.N.Y.1973), *aff'd*, 495 F.2d 763 (2d Cir. 1974). *See also United States v. Garcia*, 496 F.2d 670, 674 n.10 (5th Cir. 1974), *cert. denied*, 420 U.S. 960, 95 S.Ct. 1347, 43 L.Ed.2d 436 (1975) (citing state cases).