UNITED STATES of America,
Plaintiff-Appellee,

v.

John Edmund PATTERSON,
Defendant-Appellant.

No. 86–5068.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 7, 1986.

Decided March 16, 1987.

---

Judy Clarke, San Diego, Cal., for defendant-appellant.

Patrick O'Toole, San Diego, Cal., for plaintiff-appellee.

Before BROWNING, Chief Judge, GOODWIN and FARRIS, Circuit Judges.

FARRIS, Circuit Judge:

John Edmund Patterson appeals his conviction of one count of conspiring to make counterfeiting plates and counterfeit twen- ty dollar federal reserve notes, in violation of 18 U.S.C. §§ 371, 471, and 474 (1982); and of one count of counterfeiting federal reserve notes as proscribed by 18 U.S.C. § 471.. The conviction followed a conditional guilty plea pursuant to Fed.R.Crim.P. 11(a)(2). Patterson was sentenced to two years of probation.

Patterson argues (1) that the counterfeiting charges against him should have been dismissed pursuant to 18 U.S.C. § 4111 (1982) because he had already been prosecuted in Mexico on the same charges and (2) that evidence seized pursuant to a search warrant should have been suppressed because the affidavit in support of the warrant was based on unwarned statements that. followed coerced statements. We affirm.

## I. BACKGROUND

### A. Facts

The parties stipulated the facts. The stipulation can be summarized as follows:

Patterson and three others were arrested in Tijuana, Mexico, on December 16, 1983, in connection with an attempt by Patterson to pass a counterfeit twenty dollar bill at a local store. Patterson was taken to the Federal Police Station in Tijuana. When he refused to make any incriminating statements, he was bound and beaten by the Mexican police. Patterson was hit on his back, sides, stomach, face, and testicles. After forty-five minutes to an hour of intermittent beating, Patterson involuntarily confessed his role in a counterfeiting scheme.

The Mexican police then contacted United States Secret Service Agent Steven Davis. Approximately three hours later, Agent Davis interviewed Patterson, who was still in the custody of the Mexican authorities. Davis did not advise Patterson of his *Miranda* rights because (1) he was unaware that he was required to do so in a foreign country and (2) he knew Patterson was being prosecuted by the Mexican authorities and he was interested in collecting evidence about Patterson's co-conspirators in the United States.

In the presence of the Mexican Federal Police, Patterson voluntarily provided Davis with a detailed account of the counterfeiting operation. Agent Davis was unaware that Patterson had been beaten.

In the early morning of December 17, 1983, Agent Davis applied for a search warrant for the printing shop in San Diego identified by Patterson as the location of counterfeiting operation. Davis summarized Patterson's statement in an affidavit in support of the warrant. The warrant was granted by a magistrate.

At 8:00 a.m. on the same day, Davis and several other Secret Service agents established surveillance at the front of the printing shop. Another agent pretended to be a friend of Patterson. He contacted one of Patterson's co-conspirators who was present at the shop. After a lengthy conversation, the undercover agent signaled the other agents who then arrested the co-conspirator. The printing shop was searched pursuant to the warrant in question. The search yielded approximately $1,500,000 in counterfeit bills as well as counterfeiting equipment.

### B. Proceedings

Patterson was tried and convicted in Mexico on April 30, 1984, for introducing and circulating counterfeit bills within Mexico. Pursuant to a treaty, he was voluntarily transferred to the United States to serve his sentence.

Following Patterson's conviction in the Mexican court, the United States government brought charges against him, pursuant to a seven count Federal Grant Jury indictment, for violating United States counterfeiting laws. On May 6, 1985, Patterson moved (1) to dismiss the indictment on double jeopardy grounds under 18 U.S.C. § 4111, (2) to suppress the incriminating statements made to the Mexican police and United States Secret Service Agent Davis, and (3) to suppress all physical evidence seized at the printing shop. The government agreed to dismiss four of the seven counts and it agreed not to use Patterson's statements in its case in chief.

The district court denied Patterson's motion to dismiss the remaining three counts and the motion to suppress physical evidence but suppressed Patterson's statements, ruling that they could not be used even for impeachment purposes. Patterson then pled guilty to one count of conspiring to make counterfeiting plates and twenty dollar federal reserve notes, in violation of 18 U.S.C. §§ 371, 471, and 474; and to one count of counterfeiting federal reserve notes as proscribed by 18 U.S.C. § 471. The third count was dismissed.

### II. ISSUES

Patterson's appeal involves several issues of first impression. We must consider whether the counterfeiting charges against Patterson should have been dismissed pursuant to 18 U.S.C. § 4111 because he had already been prosecuted in Mexico on the same charges and whether Patterson's unwarned voluntary statements to Agent Davis could properly be used in an affidavit in support of a search warrant. The latter issue requires us to consider (1) whether the statements were the fruit of the prior coerced statements, (2) whether *Miranda* applies to statements used in an affidavit for a search warrant, and (3) whether the "good-faith" exception to the exclusionary rule applies if the statements should not have been used in the affidavit.

### III. DISCUSSION

#### A. Application of Section 4111

Patterson contends that the wording of § 4111 implies broader double jeopardy protection than that defined in existing case law. He further contends that this broad protection prohibits his prosecution in the United States because he was already prosecuted for the same offense in Mexico. We review this question of law *de novo*. *See United States v. Launder*, 743 F.2d 686, 688–89 (9th Cir.1984).

Section 4111 provides in part:

An offender transferred to the United States shall not be ... prosecuted ... by the United States ... for any offense the prosecution of which would have been barred if the sentence upon which the

transfer was based had been by a court of the jurisdiction seeking to prosecute the transferred offender. . . .

The statute defines "offender" as "a person who has been convicted of an offense. . . ." 18 U.S.C. § 4101(e). It defines sentence as "not only the penalty imposed but also the judgment of conviction. . . ." 18 U.S.C. § 4101(h).

The statute requires us to hypothesize that the first sentence was imposed by a United States District Court. The transfer of Patterson from Mexico to the United States should be analyzed as if it were a transfer between two United States federal courts, not two sovereigns.

■ The legislative history reveals that § 4111 "provides the offender with the *same protection against double jeopardy* that he would have had had he been sentenced by the court of the jurisdiction seeking to prosecute him." H.R. Rep. 720, 95th Cong., 1st Sess. 38, *reprinted in* 1977 U.S. Code Cong. & Admin. News 3146, 3161 (emphasis added). Patterson's contention that he is afforded expanded double jeopardy protection under § 4111 is without merit.

Since existing prohibitions against double jeopardy apply, the test developed under *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), is apposite. The test is appropriate where the legislative intent of the relevant statutes is not clear. *See generally, Garrett v. United States*, 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985). Here legislative history which would define the interrelationship between the Mexican and the United States statutes is nonexistent.

In *Blockburger*, the Supreme Court stated that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. . . ." *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182; *see also May v. United States*, 261 F.2d 629, 630 (9th Cir.1958) (applying *Blockburger* to uphold conviction for three counts of counterfeiting where two counts split one transaction into two offenses under 18 U.S.C. § 474), *cert. denied*, 359 U.S. 994, 79 S.Ct. 1128, 3 L.Ed.2d 982 (1959).

■ Patterson was convicted in Mexico under 13 C.P.D.F. Art. 238, § IV, ¶ two. That statute provides, in relevant part, that "[w]hoever introduces into the Republic or circulates in it counterfeit or altered bills as proscribed by this section shall be punished. . . ." Article 238, §§ I, II, III, and the first paragraph of IV make it a crime to counterfeit or alter Mexican or foreign bank bills. Circulating counterfeit bills is a crime distinct from producing counterfeit bills. The record of Patterson's Mexican trial is replete with facts emphasizing that he circulated foreign bills.

On the other hand, Count One of the offense charged by the United States government involves a conspiracy, under 18 U.S.C. § 371, to make (1) twenty dollar reserve notes, as proscribed by 18 U.S.C. § 474, and (2) counterfeiting plates, as proscribed by 18 U.S.C. § 471. A violation of the U.S. conspiracy statute does not require the same elements or facts as does a violation of the Mexican statute for circulating counterfeit bills.

Count Three, however, charged Patterson with the substantive offense of counterfeiting. 18 U.S.C. § 471. That section does not require or mention circulating the counterfeit notes. Instead, it provides that "[w]hoever, with intent to defraud, falsely makes, forges, counterfeits, or alters any obligation . . . of the United States shall be fined . . . or imprisoned. . . ." If, however, a person "with intent to defraud, passes, utters, publishes . . . or keeps in possession . . . counterfeited, or altered obligation[s]," that person is guilty of another offense, proscribed by 18 U.S.C. § 472, for which Patterson was not charged. United States law draws a distinction between passing counterfeit notes and making counterfeit notes.

The Mexican statute prohibiting the circulation of counterfeit notes requires proof of facts different from the United States statute prohibiting counterfeiting. The of-

fenses prohibited by the statutes are distinct under *Blockburger.* Patterson recognizes the difference in the offenses but argues that his Mexican *sentence* covered both offenses. We understand but reject the argument. He was sentenced for the offense for which he was charged and convicted.

## B.  SUPPRESSION OF EVIDENCE

Patterson contends that the evidence seized pursuant to the search warrant should have been suppressed, because the affidavit in support of the search warrant was based on unwarned statements that followed coerced statements. If the statements should not have been used in the search warrant affidavit, then the warrant may have been defective for lack of probable cause.

### 1.  Significance of the Prior Coerced Statements

We have not yet decided an appeal involving a statement elicited after a prior involuntary statement and later used in an affidavit for a search warrant. However, this court and the Supreme Court have considered cases where a statement made after a prior involuntary statement was used against the defendant at trial. These cases involve violations of Fifth Amendment rights against self-incrimination and Fourteenth Amendment due process rights. Their reasoning is instructive.

"When a statement is claimed to be inadmissible as the product of a prior coerced confession the issue is solely one of voluntariness." *United States v. Schmidt,* 573 F.2d 1057, 1062 (9th Cir.), *cert. denied,* 439 U.S. 881, 99 S.Ct. 221, 58 L.Ed.2d 194 (1978); *see also, Clewis v. Texas,* 386 U.S. 707, 708, 87 S.Ct. 1338, 1339, 18 L.Ed.2d 423 (1967) (the issue is whether, considering the totality of circumstances, the statement was voluntary); *Lyons v. Oklahoma,* 322 U.S. 596, 603, 64 S.Ct. 1208, 1212, 88 L.Ed. 1481 (1944) (admissibility of the later confession depends on the test—is it voluntary). The following factors have been identified as relevant to the issue of whether a statement made after an involuntary

statement is voluntary: (1) a break in the stream of events sufficient to insulate the statement from the effect of all that went on before, *Clewis,* 386 U.S. at 710, 87 S.Ct. at 1340; (2) "inferences as to the continuing effect of the coercive practices which may fairly be drawn from the surrounding circumstances," *Lyons,* 322 U.S. at 602, 64 S.Ct. at 1212; (3) "the time that passes between confessions, the change in the place of interrogations, and the change in identity of the interrogators," *Oregon v. Elstad,* 470 U.S. 298, 310, 105 S.Ct. 1285, 1294, 84 L.Ed.2d 222 (1985); (4) removal of the conditions which preclude the use of the first statement, *United States v. Bayer,* 331 U.S. 532, 540–41, 67 S.Ct. 1394, 1398, 91 L.Ed. 1654 (1947).

Similar considerations have been advanced, under *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), and its progeny, to determine whether to admit statements or other fruits derived from an illegal arrest or entry in violation of the Fourth Amendment. "In order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken, *Wong Sun* requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be sufficiently an act of free will to purge the primary taint." *Brown v. Illinois,* 422 U.S. 590, 602, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416 (1975) (citation omitted).

■ We need not re-examine the voluntariness of Patterson's second statement to Agent Davis. Patterson stipulated that his statement to Davis was voluntary. "When parties have entered into stipulations as to material facts, our duty is to treat such facts as having been established by the clearest proof." *Schlemmer v. Provident Life & Accident Ins. Co.,* 349 F.2d 682, 684 (9th Cir.1965); *see also Kealy v. Harter,* 682 F.2d 198, 201 (8th Cir.1982) ("Voluntary stipulations of fact are conclusive and can be controverted on appeal only under exceptional circumstances."). Therefore, the fact that Patterson's statements to Agent Davis followed earlier coerced statements does not preclude the use of Patter-

son's statement in an affidavit for a search warrant.

All evidence concerning Patterson is not "fruit of the poisonous tree" simply because it would not have come to light but for the reprehensible actions of the police in Tijuana. *See Wong Sun,* 371 U.S. at 487–88, 83 S.Ct. at 417. Agent Davis did not exploit the brutal beating of Patterson that led to Patterson's first statement. He did not know about the beating, nor is it argued that he had reason to know about it. Davis's questions elicited voluntary responses in a manner that purged the primary taint so that the responses could be used in an affidavit to support a search warrant. We express no view as to other uses of Patterson's statements. We limit our review to the unique fact situation and issues before us.

### 2. *Miranda* Violation

■ Patterson's statements were elicited even though Patterson was not advised of his *Miranda* rights. *Miranda* violations do not abridge the Fifth Amendment constitutional privilege against self-incrimination, but instead involve prophylactic standards laid down to safeguard that privilege. *See Michigan v. Tucker,* 417 U.S. 433, 446, 94 S.Ct. 2357, 2364, 41 L.Ed.2d 182 (1974). Statements obtained in violation of *Miranda* may not be admitted against the accused, at least in the prosecution's case in chief. *Fare v. Michael C.,* 442 U.S. 707, 718, 99 S.Ct. 2560, 2568, 61 L.Ed.2d 197 (1979). "But the *Miranda* presumption, though irrebuttable for purposes of the prosecution's case in chief, does not require that the statements and their fruits be discarded as inherently tainted." *Elstad,* 470 U.S. at 307, 105 S.Ct. at 1292. The *Wong Sun* "fruits of the poisonous tree" doctrine does not control where there is no constitutional violation. *See Elstad,* 470 U.S. at 308, 105 S.Ct. at 1293.

The Supreme Court has not decided whether statements taken in violation of *Miranda* may be used in an affidavit for a search warrant to establish probable cause.

The Supreme Court might have resolved this issue in *Massachusetts v. White,* 439 U.S. 280, 99 S.Ct. 712, 58 L.Ed.2d 519 (1978)(per curiam), but an equally divided Court (4–4) affirmed the decision of the Massachusetts Supreme Court to exclude physical evidence seized pursuant to a search warrant based on statements made in violation of *Miranda.* Our decision in *United States v. Lemon,* 550 F.2d 467 (9th Cir.1977), however, dictates a contrary result in this circuit.

In *Lemon* we held that it was proper to admit physical evidence—marked bills from robbed banks and a shirt similar to the one worn by the robber—discovered after police arrested the defendant and asked for his consent to search his hotel room. The defendant had not been informed of his *Miranda* rights. We concluded that the consent to search did not constitute an incriminating statement for the purposes of *Miranda.* We also decided that the defendant's consent could be introduced at a suppression hearing to establish the validity of the search. We noted that statements taken in violation of *Miranda* may not be used to prove the prosecution's case at trial, but that such evidence may be used for other purposes if it satisfies legal standards of trustworthiness. We pointed out that defendant's statement was introduced at a pre-trial suppression hearing, and held that "[s]tatements elicited prior to the giving of *Miranda* warnings may be used during a motion to suppress to show defendant's consent to a search," *id.* at 473, relying principally upon the Fifth Circuit's decision in *United States v. Garcia,* 496 F.2d 670, 674–75 (1974).

*Lemon* requires a holding that Patterson's statement, concededly voluntary, was properly used to establish probable cause.

### 3. The Good-Faith Exception

The district court's decision was based solely on the "good-faith" exception created by *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Since we hold that Patterson's statements

could properly be used to obtain the search warrant, we need not determine the applicability of the "good-faith" exception.

AFFIRMED.