UNITED STATES of America,

v.

Martin J. PECORARO, Defendant.

No. 95–CR–080A.

United States District Court,
W.D. New York.

Feb. 24, 1997.

Hon. Patrick H. Nemoyer, U.S. Atty., Buffalo, NY, for the Government; Thomas S. Duszkiewicz, Asst. U.S. Atty., of counsel.

Angelo Musitano, Niagara Falls, NY, for defendant.

## ORDER

ARCARA, District Judge.

This case was referred to Magistrate Judge Carol E. Heckman, pursuant to 28 U.S.C. § 636(b)(1). On March 6, 1996, defendant Martin Pecoraro filed a motion: (1) to suppress evidence obtained as a result of certain court-ordered electronic surveillance; and (2) to suppress evidence obtained as a result of a warrantless search of defendant's home. On June 10, 1996, Magistrate Judge Heckman filed a Report and Recommendation, recommending that defendant's motion to suppress evidence obtained as a result of electronic surveillance be denied.

The defendant filed objections to the Magistrate Judge's Report and Recommendation on June 17, 1996, and the government filed a reply thereto. The Court held oral argument on defendant's objections on August 13, 1996, and referred the matter back to Magistrate Judge Heckman for consideration of defendant's motion to suppress evidence obtained from the warrantless search of his home.

On January 14, 1997, Magistrate Judge Heckman filed a Report and Recommendation, recommending that the defendant's motion to suppress evidence obtained from the warrantless search of his home be denied. Defendant filed objections on February 10, 1997 and the government filed a reply thereto. Oral argument on the objections was held on February 19, 1997.

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Reports and Recommendations to which objections have been made. Upon a *de novo* review of the Reports and Recommendations, and after reviewing the submissions and hearing argument from the parties, the Court adopts the proposed findings of the Reports and Recommendations.

Accordingly, for the reasons set forth in Magistrate Judge Heckman's Reports and Recommendations of June 10, 1996 and January 14, 1997, defendant's motions to suppress evidence are denied in all respects.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

Defendant is charged with multiple violations of the Federal Controlled Substances Act. Defendant moves to suppress evidence obtained as a result of a warrantless search of the defendant's home. For the reasons set forth below, this motion should be denied.

### BACKGROUND

A suppression hearing was held on this motion on September 18, 1996. Two witnesses testified for the government and no witnesses testified for the defense. Following the hearing, the court directed the parties to submit briefing. Oral argument was heard on November 20, 1996. The decision was taken under advisement at that time.

The first government witness was Special Agent Bruce Johnson. He testified that he went to the defendant's home in Amherst, New York to execute an arrest warrant on May 17, 1995. He and various other agents arrived at the residence at approximately 8:00 a.m. The defendant was in his bedroom upstairs sleeping. Agent Johnson as well as Agent O'Connell and Trooper White where led upstairs to defendant's bedroom by defendant's parents.

The agents were dressed with their raid jackets identifying their various law enforcement agencies. Agent Johnson asked the defendant if he had any drugs. He said, "No." Then Agent Johnson asked the defendant if it was okay to search and he said, "Go ahead, there's nothing here." The defendant denied having any weapons, but stated that he did have money in the dresser. As Agent Johnson was questioning the defendant, Trooper White looked inside the dresser and said that the defendant had quite a lot of money in the dresser. Johnson explained to the defendant that he would seize it and that the defendant could take it up with the case agent when the case was processed. Trooper White also asked the defendant if the black Lexus in the driveway was his. He indicated that it was. The defendant gave permission to search the car and denied that

he had weapons or money in the car. He also explained that the money in the dresser came from a 401k account.

On cross examination, it was established that the bedroom was approximately 10' × 10' and had a number of people in it. It was very crowded when the consent was given. No *Miranda* rights were given in the bedroom, and the agents did not have a search warrant.

Johnson's purpose in the initial round of questions was to protect the safety of the agents. Even if the defendant had refused their request to search the bedroom, Johnson testified that they would have searched the dresser because it was within the defendant's grabable area.

The second witness to testify was Trooper Jeannie Marie White. She participated in the arrest in Amherst. She was in uniform and in a marked car. The defendant's mother took the agents to the bedroom where the defendant was sleeping. The defendant was sitting on the edge of the bed. The dresser was within reach of the defendant. Trooper White advised the defendant that the agents had an arrest warrant and he had to come with them. No *Miranda* warnings were given. Someone handed the defendant his clothes at the end of the bed. Agent Johnson asked the defendant if he had any drugs and he said no. Agent Johnson asked the defendant if he minded if the agents looked around the room and he said no. As soon as the defendant stated that it was okay to search the room, Trooper White looked into the dresser drawers and found a brown paper bag which contained a large amount of money. It was approximately $10,000. Meanwhile, Agent Johnson continued to question the defendant as to whether he had any weapons or money in the house. The defendant said that he took the money out of a 401k.

Trooper White also found keys on the dresser. She asked if these were his car keys and he said they were. The defendant denied having anything illegal in the car. The defendant also gave permission to search the car. In the car, she found a small bottle of green vegetable matter believed to be marijuana and a glass pipe in the glove box.

Defendant was in the car while it was being searched. The defendant was read his rights after he was placed in the trooper's car.

As to the search of the dresser, Trooper White testified that she would have sought a search warrant if the defendant refused to give permission to search the room and that she was concerned about officer safety.

### DISCUSSION

The record in this case clearly establishes that Agent Johnson and Trooper White obtained the defendant's consent to search first the area within his bedroom and later his vehicle. The defendant argues that this consent was not voluntary given the small room in which the defendant was present, the fact he had just been woken up, and the presence of three to four armed officers in his room, at least one of whom was in uniform. It is well established that whether a consent to search is voluntary "is a question of fact to be determined from the totality of the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). No single factor is determinative and the officers do not need to inform the person of the right to refuse consent. *Schneckloth*, 412 U.S. at 226. Furthermore, it is possible to obtain consent after a person has been arrested and placed in custody and prior to being advised of *Miranda* rights. *United States v. Lemon*, 550 F.2d 467, 472 (9th Cir.1977). It is clear that a consent to search is not the type of incriminating statement toward which the Fifth Amendment is directed and therefore the Fifth Amendment analysis does not apply when the voluntariness of the consent to search is at issue. *Miranda* protects the Fifth Amendment privilege against self-incrimination, not the Fourth Amendment prohibition against unreasonable searches and seizures. *United States v. Faruolo*, 506 F.2d 490, 495 (2d. Cir.1974). Indeed, a valid consent to search may be given even after the *Miranda* right to remain silent has been exercised. *United States v. Busic*, 592 F.2d 13, 22 note 6 (2d Cir.1978).

Considering the circumstances in this case, I conclude that the defendant's consent

was voluntary. Although it is true that the defendant was in a small room, had just been woken up and was surrounded by police agents, there are no other circumstances present which would indicate that the consent was coerced. For instance, there is no claim that the consent was obtained by deceit or false statements. Furthermore, the defendant promptly advised the agents as to the location of the money, indicating that he was thinking clearly at the time and capable of responding to questions. There is no proof in this case that he was under the influence of any drugs or that the agents' conduct was such as to overbear his will. Accordingly, I conclude that the consent was voluntary under all the circumstances. This included the initial consent to search the room and the subsequent consent to search the car.

■ Furthermore, a search of the dresser was justified as a search incident to the arrest. This exception to the search warrant rule permits the police to search a lawfully arrested person in areas within his immediate control. *Smith v. Ohio*, 494 U.S. 541, 543, 110 S.Ct. 1288, 108 L.Ed.2d 464 (1990) (per curiam). The reason for this exception is to protect the officers and to insure that the subject does not have access to a weapon or destructible area. *United States v. Perea*, 986 F.2d 633, 643 (2d Cir.1993). Here, the record clearly supports the proposition that the dresser was in the immediate control or grabable area of the defendant. The officers therefore were legitimately concerned about the presence of weapons in that dresser and were entitled to search.

### CONCLUSION

For the foregoing reasons, defendant's motion should be denied.

Jan. 14, 1997.