[No. B132056. Second Dist., Div. Five. June 8, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
NOLAN EDWARD BREWER, Defendant and Appellant.

## COUNSEL

Jon Bryant Artz and Lawrence M. Longo for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Steven D. Matthews and Arthur H. Auerbach, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WEISMAN, J.**\*—Defendant Nolan Edward Brewer appeals from a judgment of conviction following a court trial in which he was convicted of possession of marijuana for sale (Health & Saf. Code, § 11359; count 2).[1] Defendant was sentenced to state prison for the low term of 16 months. Defendant was allowed to remain free on bail pending appeal. Defendant contends that the trial court erred (1) when it denied his motion to suppress evidence since statements of defendant that were obtained in violation of his *Miranda* rights were used to supply probable cause to obtain a search warrant for defendant's residence, which led to the seizure of additional physical evidence; and (2) when it did not grant his motion to traverse and quash the search warrant for defendant's residence on the grounds that the affidavit in support of probable cause contained intentionally or recklessly misleading statements and omitted material facts. We reject these contentions and affirm the judgment of conviction.

---

\*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]The charge in count 1, sale or transportation of marijuana (Health & Saf. Code, § 11360, subd. (a)), was dismissed in the interests of justice on the motion of the People pursuant to Penal Code section 1385 following defendant's conviction on count 2.

## Factual Summary[2]

*Testimony Adduced at the Hearing on the Motion to Suppress Evidence Based on the Lawfulness of Defendant's Arrest*[3]

### A. Testimony of Deputy Duvall[4]

On November 29, 1997, at approximately 8:30 a.m., Los Angeles County Deputy Sheriff Doug Duvall was working traffic enforcement in the 22400 block of Pacific Coast Highway. He observed a gray Toyota Camry driven by defendant traveling eastbound at an estimated unsafe speed of 65 miles per hour in an area posted for 45 miles per hour. Deputy Duvall made a U-turn and observed the vehicle make a high-speed, unsafe, swerving lane change. His radar confirmed that the vehicle was going 64 miles per hour when it made the lane change. He activated his lights and made a traffic stop of defendant's vehicle. As Deputy Duvall approached the vehicle, defendant stepped out. Deputy Duvall asked defendant to get back in the vehicle since defendant was stepping into the number 2 traffic lane of Pacific Coast Highway.

---

[2]Defendant raises issues on appeal relating to the motions to suppress and to traverse and quash the search warrant, and does not challenge the sufficiency of the evidence to support his conviction. The court trial in this case was conducted based on a submission on the evidence presented at the hearing on the motions to suppress and to traverse and quash, and the transcript of the preliminary hearing and the police reports. Since the only issues relate to the ruling on the motions to suppress and to quash and traverse the search warrant, we will present this factual summary based only on the evidence presented at the hearing on those motions.

[3]The hearing on the motion to suppress focused on the reasonableness of defendant's detention following the traffic stop, the reasonableness of his arrest for driving under the influence of marijuana, and the reasonableness of his arrest for transportation and possession for sale of the marijuana. Counsel and the court also addressed the issue of whether statements obtained in violation of *Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974] could lawfully be used for purposes of establishing probable cause. A separate hearing was subsequently held on the motion to traverse and quash based on alleged intentional or reckless misstatements contained in an affidavit in support of a search warrant for defendant's residence. An issue addressed at the hearing on the motion to quash also concerned the use of statements obtained in violation of *Miranda* principles in the affidavit in support of the search warrant. We will set forth the facts adduced at each hearing separately in this opinion because they were the subject of separate hearings on separate motions.

[4]In ruling on the motion to suppress, the trial court expressly found it believed the testimony of Deputy Duvall and disbelieved the testimony of defendant. The court ruled that it found the testimony of "a sober Deputy Sheriff" more credible than the testimony of a "stoned person" such as defendant. The trial court specifically noted that the defendant made "a very silly impression here" in court. He pointed out that defendant "giggled through his testimony and found parts of it funny." The trial court ruled that "I don't find him credible at all." We are bound by the trial court's determination of credibility of witnesses and the trial court's resolution of conflicts in the evidence if supported by substantial evidence. (*People v. Green* (1996) 46 Cal.App.4th 367, 372 [54 Cal.Rptr.2d 12].)

As Deputy Duvall approached the Camry, he could smell the odor of marijuana coming from inside the vehicle. He then asked defendant to exit the vehicle and to step out of the street to an area between the Camry and the patrol car. As they were walking to that area, Deputy Duvall explained to defendant that he asked him to exit the car because he smelled marijuana. Defendant then turned to face Deputy Duvall, and Deputy Duvall observed a clear plastic baggie that appeared to contain marijuana protruding from the breast pocket of defendant's shirt. Deputy Duvall retrieved the baggie from defendant's pocket. The baggie contained two loose buds and two additional buds were separately wrapped in clear cellophane wrap. The buds were "fairly large" compared to buds Deputy Duvall normally observed in performing his duties. The total weight of the marijuana appeared to Deputy Duvall to be less than one ounce. Deputy Duvall asked defendant if he had a medical prescription to use marijuana, and defendant said he did not. Deputy Duvall then began to walk defendant over to the patrol car. As he walked with defendant, Deputy Duvall asked defendant when he last smoked and defendant answered, "I just smoked a joint ten minutes ago."

Deputy Duvall noticed that defendant seemed "very nervous." Deputy Duvall performed a "convergence" field sobriety test on defendant and noticed that defendant's eyes responded differently than someone who was not under the influence. He also noticed that the white part of defendant's eyes was "pinkish in color" which indicated he could be under the influence. He formed the opinion that defendant was under the influence of marijuana. He was going to conduct a search of defendant's vehicle for additional drugs and was concerned for his own safety and that of defendant who could stumble or step into traffic. He decided to place defendant into the rear of the patrol car and to call for a backup unit. Before placing defendant in the rear of the patrol car, he conducted a patdown search of defendant. He retrieved a pager and loose money in a pocket that totaled over $500.

After determining that the backup unit was close by, Deputy Duvall searched the Camry and found a cell phone and an envelope containing $7,000. He located the envelope containing the money in the center console of the Camry. He also found a rental agreement inside the car that indicated the Camry was rented by defendant. He also found a piece of paper from the Monterey Bay Inn that had numbers written on it. The numbers included a total divided by 16 and he thought that it could reflect a price for a pound of marijuana since a pound contained 16 ounces.

As he searched the car, he noticed that Deputy Knudson had arrived as his backup, had taken defendant out of the patrol car, and was talking to defendant by the side of the road. Deputy Knudson told Deputy Duvall about

his conversation with defendant and Deputy Duvall asked defendant about the $7,000. Defendant said he was on his way to Long Beach to buy a car. Defendant did not know what kind of a car he was going to buy and he did not know what dealership he was going to in Long Beach. When defendant was asked about the rental agreement he stated that he was going to renew the rental agreement that day. Deputy Duvall believed that the statements about buying a car and renewing the rental agreement were contradictory. Deputy Duvall and Deputy Knudson never gave *Miranda* warnings to defendant prior to questioning him. Deputy Duvall then asked Deputy Knudson about the numbers on the piece of paper from the Monterey Bay Inn, and Deputy Knudson said that the numbers "lined up" with the price of a pound of high-grade marijuana.

After defendant had been transported to the sheriff's station, Deputy Knudson told Deputy Duvall that the pager had been "going off" and that there were several numbers on the pager that he believed were a code. He gave that information to Deputy Cater.[5] The pager never actually "activated" in Deputy Duvall's presence at the scene of the stop in the sense of "beep[ing]" or "buzz[ing]" and he did not tell Deputy Cater later that the pager had "activated" at the scene in that sense. He could have used the term "activated" in his discussion with Deputy Cater to mean that there were pages stored on the pager. Deputy Knudson looked at the pager and "went through most of it" and pointed out the different numbers.[6] Deputy Duvall looked at the pager at the station and observed that one of the stored numbers was 333. He later informed Deputy Cater that the pager had several numbers on it, including the number 333. He also informed Deputy Cater at a later point that defendant had made conflicting statements about buying and renting a vehicle. Deputy Cater never asked him whether anyone had given *Miranda* warnings to defendant.

Deputy Duvall formed the opinion that defendant was under the influence of marijuana based on his observations and on additional field sobriety tests that he conducted. He then arrested defendant for driving under the influence. He also formed the opinion that defendant was transporting marijuana and was possessing marijuana for sale. He based this opinion on the manner in which the separate marijuana buds were individually packaged, the large

---

[5]Deputy Cater was the affiant on a search warrant that was subsequently obtained for defendant's residence.

[6]At the suppression hearing, the court and counsel referred to and discussed a portion of the preliminary hearing transcript reflecting that at the preliminary hearing defendant's counsel had gone through five or six entries on the pager and each had a telephone number, but the entry for January 1, at 5:55 p.m., had the number 333 instead of a phone number. The transcript of the preliminary hearing was used because, as defense counsel explained to the court, "I was going to activate it today and do it again, but the batteries have died."

amount of cash found in the vehicle, and his discovery of a pager, cell phone, and the "pay/owe sheet." He arrested defendant for the marijuana possession and transportation as well as for driving under the influence.

## B. *Testimony of Defendant*[7]

Defendant testified that he was driving on Pacific Coast Highway "looking at the surf [in] Malibu" when he looked up and saw that the right lane was coned off ahead. He speeded up to get into the fast lane between some cars that were ahead of him. He noticed Deputy Duvall turn on his lights and try to get behind defendant's car. Defendant lowered the windows on his vehicle because he had been smoking marijuana and knew that the car smelled of marijuana. Defendant began to panic and he looked in his rear view mirror and stuffed a baggie containing four buds of marijuana down his shirt before he pulled over. Defendant got out of the car and started to walk toward Deputy Duvall. Deputy Duvall asked him to get back in the car. Deputy Duvall then approached the car and asked defendant for his driver's license. He then told defendant to get out of the car. Defendant exited the car and began to walk to the rear when he felt Deputy Duvall reach underneath his left arm and begin "rummaging around" in defendant's pockets. Deputy Duvall grabbed the baggie of marijuana out of defendant's pocket. Defendant then emptied his pockets in response to an order from Deputy Duvall. He removed $500, a wallet and a pager from his pockets.

Defendant was then placed in the police car. Defendant did not believe he was free to leave at that point. Deputy Duvall then searched defendant's car for about 10 minutes. Deputy Knudson arrived and let defendant out of the police vehicle. Defendant then stated, "I want to talk to an attorney. If I'm under arrest I want to talk to an attorney." Deputy Knudson replied, "Oh, you don't need an attorney, this is just a small amount of marijuana." Deputy Knudson then asked him what was in the envelope, since it was still sealed at that point. Defendant said there was $7,000 in the envelope. Deputy Knudson asked him where he was going and he said that he was going to Long Beach to look for a new car for his wife. Deputy Knudson stopped asking questions the second time defendant said he wanted to speak to an attorney. Defendant was never told he had to answer any questions. No deputy ever drew a weapon. He was questioned outside of the car rather than while he was inside the vehicle. Defendant was not handcuffed while he was questioned. Defendant was not threatened while he was questioned.

Defendant was transported to the Lost Hills Sheriff's Station. At the station Deputy John Cater entered a room where defendant was being held,

---

[7]As noted previously, the trial court did not find defendant to be a credible witness.

and told defendant, "I am specifically here to ask permission to search your house." Defendant responded, "[N]o one has given me my rights, I want to talk to an attorney." Deputy Cater then said, "Well, I believe I have enough evidence here for probable cause to get a search warrant, and if you want to talk to an attorney I will go to your house, arrest your wife, and put her in jail." Defendant responded, "Well, if you go to my house, will you just look in one place if I tell you." Defendant then admitted he had four pounds of marijuana because he was afraid and he did not want his wife to go to jail. Deputy Cater told him that he wanted to search the entire house for contraband. Deputy Cater asked him if he would consent to a search, but defendant said, "No, I think I better talk to an attorney." The discussion then terminated and defendant was placed back in the lockup.

*Testimony Adduced at the Hearing on the Motion to Traverse and Quash the Search Warrant*

### Testimony of Deputy Cater

On November 29, 1997, Los Angeles County Deputy Sheriff John Cater, a narcotics detective with over nine years of narcotics experience, went to the Lost Hills Sheriff's Station in response to a call or page from another deputy about a person who had been arrested on a narcotics charge and was in custody. When he arrived at the station he spoke to Deputy Knudson, who told him about the arrest of defendant earlier that day. He did not ask Deputy Knudson if defendant been advised of his *Miranda* rights or had asked for an attorney. He did not ask those questions because he did not plan to interview defendant about the facts of the case. He planned to ask defendant for consent to search his residence and to see if he wanted to act as an informant.

If he did not obtain consent to search, he would have to draft an affidavit in support of probable cause for a search warrant. He did not believe that it was significant to know if defendant had been advised of his rights or asked for an attorney because he was using statements only for probable cause purposes. Also, he believed that any statements were properly obtained during the investigatory phase and not during any postarrest interviews. He was primarily relying on information from the patrol deputies and not on quotes from the defendant. Unless a deputy told him that certain information was provided by the defendant through a statement, he assumed that it came from the deputy's own observations of the evidence at the scene. He believed that the manner of packaging of the marijuana was the most significant factor in determining if it was possessed for sale. He did not consider the actual weight of the marijuana to be significant on that issue

and did not include the weight in the affidavit that he ultimately prepared in this case. The actual weight of the marijuana in his opinion was between an eighth of an ounce and a half ounce. He believed that the buds of marijuana that were individually wrapped in defendant's pocket were actually samples to show potential buyers, and he believed defendant was a midlevel dealer. He believed that defendant had purchased some marijuana in Northern California for resale because of the writing on the paper from the Monterey Bay Inn. He believed it was reasonable to infer that the marijuana for sale would be stored at defendant's residence. He was told that the amount of money in the envelope was $7,000 and he assumed that the patrol deputies obtained that figure by counting the money and not from questioning defendant.

When he went to ask defendant for consent to search, he took defendant from the booking area to an interview room. He could tell from looking at defendant that he had been "smoking pot" but he could not tell his exact state of sobriety. Deputy Cater explained that he thought he had enough information to seek a warrant, and he asked defendant for permission to search his house. Defendant responded, "I have about five pounds of bud in one place in my house. If I give it to you will you just leave and not bother my wife." Deputy Cater explained that it was his intention to search the entire house. Defendant did not give consent to a search, and said that he "better get a lawyer." Deputy Cater then left the room and placed defendant back in the booking area. When he drafted the affidavit, Deputy Cater included in the affidavit the fact that defendant had asked for an attorney.

## DISCUSSION

*The Use in the Affidavit in Support of the Search Warrant of Defendant's Statements That Were Obtained in Violation of Miranda*

Defendant initially claims that his statements to Deputy Knudson that (1) the envelope contained $7,000, and (2) he was going to Long Beach to look for a new car for his wife but did not know the type of car, the dealership, or where in Long Beach he was going to, should have been suppressed. He also claims that his "contradictory" statement to Deputy Duvall that he was going to Long Beach to renew his car lease should have been suppressed. He argues that these statements to Deputies Knudson and Duvall were coerced and involuntary because (1) they were obtained in violation of *Miranda v. Arizona, supra*, 384 U.S. at page 474 [86 S.Ct. at pages 1627-1628], since he was never informed of his constitutional rights to remain silent, to not incriminate himself, and to have an attorney present during questioning by the police, and (2) they were obtained after he

invoked his right to an attorney. He contends that their subsequent use in the search warrant affidavit prepared by Deputy Cater was improper and that the trial court should have excised these statements and retested the warrant for probable cause. Had the court done so, argues defendant, the warrant would have been insufficient. Thus, he concludes that the marijuana ultimately discovered when the warrant was executed should have been suppressed as "fruit of the poisonous tree."

Next, defendant contends that the statements he made to Deputy Cater about the five pounds of marijuana being in one location in his residence were (1) the fruit of his earlier statements to Deputies Duvall and Knudson, and (2) improper since they were the product of "renewed interrogation" following his invocation of his right to an attorney. He claims he initially invoked his right to an attorney prior to his statements to Deputy Knudson, renewed his request to speak to an attorney prior to his "contradictory" statement to Deputy Duvall, and invoked his right to an attorney prior to making any statements to Deputy Cater. He argues that his statements to Deputy Cater should also be excised from the search warrant affidavit as "fruits of the poisonous tree" and that when the warrant is retested it fails to provide probable cause for a search of his residence.

A basic problem with defendant's argument on appeal is that it depends entirely on the credibility of his testimony at the suppression hearing. No other witness testified that defendant invoked his right to an attorney at any time with respect to Deputies Duvall and Knudson. Deputy Duvall testified at length but never once stated or even hinted that defendant invoked his right to an attorney in his presence or that he heard an invocation in front of Deputy Knudson. Deputy Cater testified only that defendant invoked his right to an attorney at the end of their conversation relating to consent to search, and that as soon as he invoked his right to an attorney Deputy Cater ceased talking to him and took him back to the booking area. Only defendant testified that he made these alleged successive and repeated invocations in front of each deputy and always before any statements were made.

The trial court heard all the testimony and found that "[t]he minute [defendant] asked for a lawyer the questioning [by Deputy Cater] stopped." Thus, the court specifically disbelieved the testimony of defendant that he had invoked his right to an attorney at the outset of his conversation with Deputy Cater. In fact, the court expressly stated that "[t]he manner of the officers testifying was very credible . . . ." The court had previously noted that it also believed the testimony of Deputy Duvall, and expressly found that it did not believe defendant's testimony. The court stated for the record that "I don't find [defendant] credible at all." It is clear that the trial court

did not believe defendant's claim that he continually invoked his right to an attorney, and found to the contrary that defendant only invoked his right to an attorney at the very end of his conversation with Deputy Cater, which was the point where all conversation ceased.

The court's statements throughout the record reflect it was aware that no evidence was being presented to prove that defendant was ever advised of his *Miranda* rights, and it specifically found that the failure to advise defendant of these rights prior to questioning constituted a violation of *Miranda.* It did not, however, find that defendant ever invoked his right to an attorney other than at the very end of his conversation with Deputy Cater. As an example, at the end of defendant's testimony, after defendant claimed he made this series of invocations before each deputy he confronted, the trial court simply noted, "It sounds to me as though [defendant] at no time waived his *Miranda* rights, based on anything I have heard thus far." The court never stated and never hinted in argument or in its rulings that it believed that defendant had continually invoked his right to counsel as he testified. The court was simply noting that there was a total absence of any proof that defendant had ever been advised of and waived his *Miranda* rights. This was consistent with the testimony of the deputies, since none of them claimed to have ever advised defendant of his *Miranda* rights. We are, of course, bound by the trial court's determination of the credibility of witnesses and resolution of factual issues. (*People v. Green, supra,* 46 Cal.App.4th at p. 372.) Here, the trial court disbelieved defendant's claims that he invoked his right to counsel prior to making the statements at issue. Thus, we cannot on appeal consider any issues he raises that depend factually on invocations of the right to counsel that were found not to have occurred by the trial court.

We must also consider whether his claims concerning the failure to properly advise him of his rights, and to obtain a valid waiver of those rights, can even be raised in a motion to suppress under Penal Code section 1538.5, which is generally limited to alleged search and seizure violations and normally does not include issues arising under *Miranda.* (*People v. Whitfield* (1996) 46 Cal.App.4th 947, 956-957 [54 Cal.Rptr.2d 370].) We agree with the holding in *People v. Whitfield, supra,* 46 Cal.App.4th at pages 957-958, that physical articles of evidence allegedly obtained in violation of Fifth and Sixth Amendment principles cannot be suppressed by use of a Penal Code section 1538.5 hearing, since such a hearing is limited to search and seizure issues.

The court in *Whitfield* noted that the proper means of suppressing statements obtained in violation of *Miranda* is by use of a hearing pursuant

to Evidence Code section 402. (*People v. Whitfield, supra,* 46 Cal.App.4th at pp. 958-959.) The court recognized, however, that a finding at an Evidence Code section 402 hearing that a statement was taken in violation of *Miranda* because of a police failure to give *Miranda* admonitions would only justify the suppression of the statement itself and would not justify the further suppression of other evidence, including physical evidence, obtained through use of the unlawful but noncoerced statement. (*People v. Whitfield, supra,* 46 Cal.App.4th at pp. 957-959.) In reaching this conclusion, the court in *Whitfield* relied on the holding of the United States Supreme Court in *Oregon v. Elstad* (1985) 470 U.S. 298, 308 [105 S.Ct. 1285, 1292, 84 L.Ed.2d 222] (the fruit of the poisonous tree concept does not apply to require suppression when the alleged fruit is a subsequent statement voluntarily given by a suspect since a mere failure to admonish a suspect does not render the initial statement coerced although the initial statement is inadmissible because it is a violation of *Miranda*),[8] and *Michigan v. Tucker* (1974) 417 U.S. 433, 446 [94 S.Ct. 2357, 2364, 41 L.Ed.2d 182] (the fruit of the poisonous tree concept does not apply to "fruits" of a statement taken in contravention of *Miranda* where the alleged violation is a failure to admonish). ▮ The *Whitfield* court found that the reasoning of *Elstad* and *Tucker* required a conclusion that the fruit of the poisonous tree analysis does not apply to the "fruit" of a noncoerced *Miranda* violation. (*People v. Whitfield, supra,* 46 Cal.App.4th at p. 955.)[9]

Thus, even if we treat defendant's motion in the trial court as being under Evidence Code section 402, the "fruit" of the *Miranda* violation in the instant case is not subject to suppression as a "fruit" of the poisonous tree if the trial court was correct in its determination that the statements taken in

---

[8]In *Dickerson v. United States* (2000) 530 U.S. 428 [120 S.Ct. 2326, 147 L.Ed.2d 405], the Supreme Court made clear that *Miranda* warnings are constitutionally based, and also reaffirmed the validity of the ruling in *Elstad* that the fruit of the poisonous tree doctrine developed in Fourth Amendment cases does not apply in cases involving noncoercive violations of *Miranda* because "unreasonable searches under the Fourth Amendment are different from unwarned interrogation under the Fifth Amendment." (*Id.* at p. __ [120 S.Ct. at p. 2335].)

[9]In *People v. Carpenter* (1999) 21 Cal.4th 1016, 1040 [90 Cal.Rptr.2d 607, 988 P.2d 531], the Supreme Court recently declined to resolve the issue of whether the fruit of the poisonous tree doctrine applied to a noncoerced statement taken in violation of the *Miranda* rules, since the alleged "fruit" in *Carpenter* was admissible under the inevitable discovery doctrine. The court referred to *Elstad* and *Tucker*, which appear to except noncoerced statements obtained in violation of *Miranda* from the fruit of the poisonous tree doctrine, but also referred to *People v. Schader* (1969) 71 Cal.2d 761, 778-779 [80 Cal.Rptr. 1, 457 P.2d 841], which applied the fruit of the poisonous tree doctrine to bar the use of "fruits" of a statement obtained in violation of *Miranda.* (*People v. Carpenter, supra,* 21 Cal.4th at p. 1040.) We note that *Schader* was a case that preceded the enactment of Proposition 8 in 1982, and the viability of its holding is questionable in light of *In re Lance W.* (1985) 37 Cal.3d 873, 888-890 [210 Cal.Rptr. 631, 694 P.2d 744].

violation of *Miranda* were noncoerced. This is true even when the evidence that is the subject of the suppression motion was obtained through the use of a search warrant that was based on an affidavit that set forth the improper but noncoerced statements. (*U.S. v. Patterson* (9th Cir. 1987) 812 F.2d 1188, 1193 [noncoerced statements obtained in violation of *Miranda* due to a failure to admonish a suspect may be used in a search warrant affidavit]; see *United States v. Lemon* (9th Cir. 1977) 550 F.2d 467, 473 [noncoerced statements obtained in violation of *Miranda* due to a failure to admonish a suspect can be used to establish consent to a search at a pretrial suppression hearing].)

Defendant recognizes in his arguments on appeal that noncoerced statements obtained in violation of *Miranda* do not require suppression of their "fruits," but he contends that his statements in the instant case were in fact coerced. He bases this contention on defendant's testimony that he invoked his right to an attorney prior to making any statements to Deputies Duvall, Knudson and Cater. As previously pointed out in this opinion, however, the trial court did not believe defendant's testimony and found to the contrary that all conversation ceased as soon as defendant asked for an attorney, which did not occur until the end of the last conversation with Deputy Cater. Given this factual finding by the trial court, there is no factual support for defendant's contention that he had earlier invoked his right to an attorney and we will not consider this baseless assertion further.

We will examine the record to determine if the trial court was correct in its determination that defendant's statements were not coerced even though there was a violation of *Miranda* due to a failure to admonish defendant about his rights. In reviewing the trial court's determination of voluntariness, we are guided by several principles. ■ First, the conclusion of a trial court on a pure question of fact is only subject to review for substantial evidence. (*People v. Mickey* (1991) 54 Cal.3d 612, 649 [286 Cal.Rptr. 801, 818 P.2d 84].) Thus, the trial court's determination of credibility of a witness, which is a factual issue, is binding if supported by substantial evidence. (*People v. Green, supra*, 46 Cal.App.4th at p. 372.) In fact, all of the trial court's findings as to factual circumstances surrounding a statement are subject to review only for substantial evidence. (*People v. Benson* (1990) 52 Cal.3d 754, 779 [276 Cal.Rptr. 827, 802 P.2d 330].) Second, the determination of voluntariness of a statement is a mixed question of law and fact that is predominately legal and is reviewed independently in light of the record. (*People v. Mickey, supra*, 54 Cal.3d at p. 649; *People v. Benson, supra*, 52 Cal.3d at p. 779.)

■ Defendant's claim that he separately invoked his right to an attorney prior to questioning by each deputy was found not credible by the trial

court, which specifically ruled that defendant's testimony was not credible after defendant's testified about the invocations. The factual ruling that defendant was not credible is supported by substantial evidence. The trial court noted the reasons for its factual determination of credibility, and the reasons are persuasive. The court noted that defendant was "stoned" and made a "very silly impression" in court, that defendant "giggled through his testimony," and that defendant "found parts of [his own testimony] funny." The court thus concluded, "I don't find [defendant] credible at all." We find that substantial evidence supports the trial court's conclusion and accept its factual finding in this regard.

With the court's determination of defendant's credibility in mind, we review the record independently to determine whether the statements of defendant to Deputies Knudson and Duvall were voluntary or coerced. The record discloses that defendant was driving in an erratic manner and his vehicle emitted an odor of marijuana. He exhibited signs of being under the influence and admitted he had recently smoked marijuana. He was hand-cuffed and placed in the backseat of a police car while his car was searched. He was in the presence of two officers after Deputy Knudson showed up. He was never advised of his *Miranda* rights by either officer prior to question-ing. He was taken out of the police car and questioned first by Deputy Knudson, who asked him about the money in the envelope and what he was doing with the money. He was then questioned by Deputy Duvall about where he was going and what he intended to do with the money. No weapons were drawn, and he was not threatened in any way. No induce-ments were offered to obtain the statements. No lengthy or abusive or intimidating interrogation took place. In fact, all questioning took place in public view next to Pacific Coast Highway at 8:30 in the morning.

We find nothing in this record that indicates that psychological or physical coercion took place that overcame defendant's will and rendered his state-ments to Deputies Knudson and Duvall involuntary. The only impropriety was the failure to admonish defendant about his *Miranda* rights, and, as previously noted, such a failure to admonish does not render a statement involuntary and coerced. Our independent review thus discloses that defend-ant's statements at the scene were voluntary and noncoerced. Since they were noncoerced, no suppression of the "fruits" of the statements is permissible.

Defendant also contends that the statement he later made to Deputy Cater about the five pounds of marijuana being in one location in his residence was subject to suppression because it was the "fruit" of his earlier statements to Deputies Duvall and Knudson, and because it was the product of "re-newed interrogation" following his invocation of his right to an attorney. As

we have already discussed, the fruit of the poisonous tree doctrine has no application to noncoerced statements obtained in violation of *Miranda*. Thus, defendant cannot seek to suppress his statement to Deputy Cater because it followed his noncoerced statements to other deputies. Addressing his contention that his statement to Deputy Cater was the product of "renewed interrogation," we note yet again that the trial court found that he had not invoked his right to an attorney prior to making the statement to Deputy Cater, and that this finding is supported by substantial evidence.

Additionally, we note that Deputy Cater did not "interrogate" defendant and thus the statement could not have been the product of "renewed interrogation." This would be true even if we found that defendant had earlier invoked his right to counsel. In *Minnick v. Mississippi* (1990) 498 U.S. 146, 153 [111 S.Ct. 486, 491, 112 L.Ed.2d 489], the United States Supreme Court clarified the rule that applies to police once a suspect has requested counsel. The court stated, "Whatever the ambiguities of our earlier cases on this point, we now hold that when counsel is requested, interrogation must cease, and officials may not reinitiate interrogation without counsel present, whether or not the accused has consulted with his attorney." (*Id.* at p. 153 [111 S.Ct. at p. 491].) This clarified the rule previously announced in *Edwards v. Arizona* (1981) 451 U.S. 477, 484-485 [101 S.Ct. 1880, 1884-1885, 68 L.Ed.2d 378], where the court had held that once a suspect requests an attorney, he is not subject to further interrogation until counsel has been made available unless the accused himself initiates further conversations with the police. (*Id.* at pp. 484-485 [101 S.Ct. at pp. 1884-1885].) ■ Thus, the rule is clear that once a suspect has requested counsel, further interrogation cannot occur unless counsel is present.

The key aspect of this rule is the prohibition on further interrogation. The inquiry of the courts must therefore focus on whether a challenged contact with the suspect by the police constituted interrogation. In *State v. Houser* (1992) 241 Neb. 525 [490 N.W.2d 168], the court addressed this exact issue, noting it had to decide "whether requesting defendant to execute a consent-to-search form after defendant has requested counsel constituted further interrogation in violation of defendant's rights." (*Id.* at pp. 175-177.) The court determined that "requests made to a defendant by one seeking consent to search the defendant's residence do not constitute further questioning, or the functional equivalent of further questioning, after counsel has been requested by the defendant." (*Id.* at p. 176.) The court based its conclusion on the fact that consent to search is not testimonial or communicative in nature, even if the consent leads to the discovery of incriminating evidence. (*Ibid.*) The court also relied on the reasoning of the United States Supreme Court in *Rhode Island v. Innis* (1980) 446 U.S. 291, 300-301 [100 S.Ct.

1682, 1689-1690, 64 L.Ed.2d 297], in which the court stated that "interrogation" refers not only to express questioning, but "also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." (*Id.* at p. 301 [100 S.Ct. at p. 1690], fn. omitted.) The court in *Hauser* found that seeking consent to search has nothing to do with pursuing an interrogation designed to have a suspect make statements contrary to his interest. (*State v. Houser, supra*, 490 N.W.2d at p. 176.) The court thus found that no *Miranda* violation occurred when the police obtained consent to search from a suspect after the suspect had requested an attorney. (*Ibid.*)

In *People v. Mobley* (1999) 72 Cal.App.4th 761, 791 [85 Cal.Rptr.2d 474], the reviewing court rejected a contention that a police officer's "attempt at casual conversation" with a suspect who was being transported to jail following his request to see an attorney constituted interrogation. The court found that the officers' statements were neither direct interrogation nor its functional equivalent that was likely to elicit an incriminating response. (*Id.* at p. 792.) The court concluded that the prohibition on renewed interrogation announced in *Edwards v. Arizona, supra*, 451 U.S. at pages 484-485 [101 S.Ct. at pages 1884-1885], applies only when there is interrogation, and that statements that are not the product of interrogation are not violative of *Miranda* principles. (*People v. Mobley, supra*, 72 Cal.App.4th at p. 792.)

In *People v. James* (1977) 19 Cal.3d 99, 114-115 [137 Cal.Rptr. 447, 561 P.2d 1135], the court found that *Miranda* had no application to a situation where an officer attempts to obtain consent to search, and that no *Miranda* warnings are required before a request to consent to a search is made regardless of whether or not the suspect is in custody. The court noted that consent is neither testimonial nor communicative, and that a request to search is designed to elicit physical and not testimonial evidence. (*Id.* at pp. 114-115.) In *United States v. Lemon, supra*, 550 F.2d at page 472, the court similarly found that a consent to search is not an incriminating statement that invokes the protections of *Miranda* and its progeny.

 It is clear, therefore, that when Deputy Cater asked defendant for consent to search his residence he was not engaged in interrogation and that *Miranda* principles did not apply. Defendant's response that he had five pounds of marijuana in his residence in one place, and his inquiry as to whether the police would "just leave and not bother my wife" if he gave them the marijuana, were statements volunteered by defendant in an attempt to narrow the scope of consent, and were not statements made in response to interrogation. Statements made by a suspect that are not in response to

interrogation are not violative of *Miranda* and may certainly be included in an affidavit in support of a search warrant. We thus find no basis to excise the statement about the five pounds of marijuana from the affidavit, and we reject defendant's contention in this regard.

*The Allegations That the Affidavit in Support of the Search Warrant Prepared by Deputy Cater Contained Intentionally or Recklessly Misleading Statements and Omitted Material Facts*

Defendant contends that the trial court should have granted his motion to traverse and quash the search warrant for defendant's residence, based on claims that the affidavit in support of probable cause contained intentionally or recklessly misleading statements and omitted material facts. Specifically, defendant contends the statement that he was in possession of an amount of marijuana packaged for resale was intentionally or recklessly misleading because he only possessed four buds that weighed less than an ounce. He also claims the failure to mention the number of buds and their total weight constituted the omission of material facts. He further claims the statement that the pager activated during Deputy Duvall's contact and displayed only 333 was intentionally or recklessly false and that it omitted the true facts that it was Deputy Knudson who examined the pager and found it contained the number 333 on a page dated January 1. He argues that the trial court erred when it failed to excise the misleading statements, insert the omitted facts, and retest the warrant for probable cause as required by *Franks v. Delaware* (1978) 438 U.S. 154, 156 [98 S.Ct. 2674, 2676, 57 L.Ed.2d 667], and *People v. Costello* (1988) 204 Cal.App.3d 431, 440-444 [251 Cal.Rptr. 325]. He asserts that if the trial court had done so it would have concluded that the warrant lacked probable cause.

Initially, we must point out that defendant is precluded from obtaining appellate review of these issues relating to his motion to traverse and quash the search warrant because he never obtained a ruling on these issues at the trial court level. (*People v. Obie* (1974) 41 Cal.App.3d 744, 750 [116 Cal.Rptr. 283]; see also *People v. Heldenburg* (1990) 219 Cal.App.3d 468, 474-475 [268 Cal.Rptr. 255].) As noted in *People v. Obie, supra,* 41 Cal.App.3d at page 750, in which a trial court neglected to actually rule on a motion under Penal Code section 995, " '[w]here the court, through inadvertence or neglect, neither rules nor reserves its ruling . . . the party who objected must make some effort to have the court *actually rule*. If the point is not pressed and is forgotten, he may be deemed to have waived or abandoned it, just as if he had failed to make the objection in the first place.' " (Italics in original.)

In *People v. Rodgers* (1976) 54 Cal.App.3d 508, 516-517 [126 Cal.Rptr. 719], the reviewing court refused to consider on appeal the defendant's claim that the trial court had erred in not imposing a sanction on the prosecution for withholding the name of an informant. The sanction sought was to excise the informant's information from the probable cause determination. As the reviewing court pointed out, however, the defendant never obtained a ruling on the requested sanction at the trial court level following a lengthy argument before the trial court on the underlying motion to disclose the informant. The court in *Rodgers* held that in failing to insist on the appropriate ruling, counsel had abandoned the point. (*Id.* at p. 516.) The court found that under such circumstances, counsel is presumed to have waived a ruling as if he had never asked for it. (*Ibid.*) The court concluded that "What all this amounts to is that the point is not arguable on this appeal." (*Id.* at p. 517.)

In *People v. Heldenburg, supra,* 219 Cal.App.3d at pages 474-475, the court applied the foregoing principles to a situation where defense counsel did obtain a ruling on prosecutorial misconduct in which the trial court agreed to admonish the jury as counsel had requested, but the trial court then forgot to give the admonishment and counsel did not press the issue and call the omission to the court's attention. The reviewing court noted that counsel has an obligation not only to secure a ruling at trial, but also to affirmatively seek implementation of that ruling once it is rendered. (*Id.* at p. 474.) The reviewing court found that by failing to press the trial court for the admonition, "defense counsel waived the issue of prosecutorial misconduct as effectively as though the issue had never been raised." (*Id.* at p. 475.) The court noted, "In short, we view defendant's claim of prosecutorial misconduct, for all practical purposes, as having been raised for the first time on appeal." (*Ibid.*) The court then declined to reach the merits of the prosecutorial misconduct claim. (*Ibid.*)

It is clear, therefore, that before we can review defendant's claim that the trial court erred by (1) not excising the "misleading" statements, (2) not inserting the omitted "material" facts, (3) not retesting the warrant for probable cause, and (4) not granting the motion to traverse and quash the search warrant due to a lack of probable cause, we must first examine the record to determine if the court ruled on these issues. The record in the case at bar discloses that the trial court made no ruling whatsoever on any of these issues and took no action whatsoever on the motion to traverse and quash the warrant other than hearing testimony from the witnesses and reiterating its prior ruling that defendant's statements were not coerced.

The record reflects that after the evidence was presented on the allegedly intentional or recklessly misleading statements and omitted material facts,

the argument on the motion to traverse and quash was presented by Mr. Artz, one of defendant's cocounsel. At the conclusion of the argument, the court did not rule on any of the issues presented in the motion. Instead, the court stated, "All right. I have some questions. I can't remember what they are now." Without obtaining a ruling on any of the issues he argued, Mr. Artz moved on by announcing that "Mr. Longo [defendant's other cocounsel] will wind it up." Mr. Longo then reargued the voluntariness of the statements obtained in violation of *Miranda*, an issue that the court had previously ruled on. Mr. Longo presented no argument on the allegedly misleading statements and omitted facts that the motion to traverse and quash was primarily based on. The court focused on Mr. Longo's arguments and evidently forgot it had never ruled on the issues relating to the allegedly misleading statements and omitted facts. At the conclusion of Mr. Longo's argument, the court asked, "Anything further?" Mr. Longo replied, "I think I've said it all." Mr. Longo then briefly argued that cases dealing with consent obtained after a *Miranda* violation were inapplicable because no consent form was ever signed by defendant, and he then submitted the matter for a ruling. The court was still focused on Mr. Longo's *Miranda* arguments and simply ruled on the issue of the voluntariness of the statements taken in violation of *Miranda*. The court found once again that there was no coercion involved in defendant's statements. The court ruled, "I do not see coercion and I will deny the motion in that regard." After making that limited ruling relating only to the issue of whether defendant's statements were coerced, the court asked both counsel, "Where does that leave us now?" Instead of informing the court it still had to rule on whether there were any intentional or recklessly misleading statements, whether there were any omitted material facts, whether the warrant had to be retested for probable cause, and whether the motion to traverse and quash should be granted based on these rulings, Mr. Artz simply replied, "We are out of ammo." At that point defendant waived a jury trial and submitted to a court trial in which he was convicted.

It is apparent from the record that counsel never obtained a ruling from the trial court on the issues he now seeks to raise on appeal concerning the existence of allegedly intentional or recklessly misleading statements and omitted material facts, whether the warrant should be retested, and whether it would support a finding of probable cause if it was retested. We follow the long-established rule that where a court, through inadvertence or neglect, neither rules nor reserves its ruling, the party who objected or made the motion must make an effort to have the court actually rule, and that when the point is not pressed and is forgotten the party will be deemed to have waived or abandoned the point and may not raise the issue on appeal. (*People v. Rodgers, supra,* 54 Cal.App.3d at pp. 516-517; *People v. Obie, supra,* 41

Cal.App.3d at p. 750; cf. *People v. Heldenburg, supra,* 219 Cal.App.3d at pp. 474-475.) Defendant is thus precluded from obtaining appellate review of these issues.[10]

## DISPOSITION

The judgment of conviction is affirmed.

Turner, P. J., and Armstrong, J., concurred.

On July 5, 2000, the opinion was modified to read as printed above.

---

[10]We note that defendant has not raised as an issue on appeal a claim of ineffective assistance of counsel based on counsel's failure to obtain a ruling on these issues. If this claim had been raised, it would have been rejected since no reversal based on a claim of ineffective assistance of counsel can occur unless a defendant can establish a reasonable probability that, but for counsel's error, the result of the proceedings would have been different in that a determination more favorable to defendant would have occurred. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-695 [104 S.Ct. 2052, 2064-2069, 80 L.Ed.2d 674]; *People v. Holt* (1997) 15 Cal.4th 619, 703 [63 Cal.Rptr.2d 782, 937 P.2d 213].) Here, there is no reasonable probability that the trial court would have found a lack of probable cause even if it had (1) excised the statement that the marijuana was packaged for resale and had inserted the weight of the marijuana, and (2) had excised the statement that the pager activated and displayed 333 and had inserted information that the pager was examined by Deputy Knudson and 333 was found on a page dated January 1. The warrant would still have revealed that defendant had marijuana buds that were separately packaged, that defendant had a large amount of cash, that defendant gave conflicting versions of why he had the cash, and, most significant of all, that defendant had told Deputy Cater that he in fact had five pounds of marijuana at his residence. Clearly, this information supplied probable cause to search defendant's residence and there is thus no reasonable probability that defendant would have obtained a more favorable result if his counsel had obtained a ruling on this point below.