Filed 3/16/21  P. v. Saddozai CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>SHIKEB SADDOZAI,<br><br>        Defendant and Appellant. | A154894<br><br>(San Mateo County<br>Super. Ct. No. 16-NF-001414A) |

Shikeb Saddozai appeals after a jury convicted him of the attempted, premeditated murder of Jane Doe, first-degree burglary, and other related crimes and enhancements, resulting in an aggregate sentence of thirty-three years to life.  He challenges the sufficiency of the evidence supporting his attempted murder conviction and premeditation enhancement and identifies numerous purported evidentiary errors.  He also challenges his sentence, arguing the trial court should have stayed his consecutive sentence for burglary, and he requests remand so the trial court can exercise its discretion to strike a prior felony sentence.  We remand for resentencing but otherwise affirm.

## BACKGROUND

### A.

Saddozai and Doe began their relationship in 2010. Shortly thereafter, Saddozai began verbally and physically abusing Doe. He frequently accused Doe of being attracted to other men and regularly demeaned her by calling her a "piece of shit" and a "whore." On one occasion, Saddozai forcibly cut off all of Doe's hair after seeing a picture of her with other men. He often kicked Doe, hit her in the face, and punched her in the mouth, in one instance knocking out her fake front teeth. Saddozai kicked Doe while she was pregnant, causing her to fall down some stairs. One time after being punched, Doe sought emergency medical care; at Saddozai's direction, Doe told the nurse the injury was the result of a car accident. Doe eventually gave birth to their child, who died of a heart problem a few months later.

Doe did not report these incidents to police because she was scared Saddozai would get upset and "beat [her] up." After arguments, Saddozai hid Doe's wallet to prevent her from leaving him. But he would later apologize, buy her flowers, and tell Doe that she was the most beautiful person in the world and that he would not repeat his actions.

In 2015, while facing criminal charges in an unrelated case, Saddozai fled to the Philippines. He was apprehended and later sentenced to prison.

While Saddozai was in prison, Doe moved out of their shared residence and did not tell him her new address. She rented a storage unit for Saddozai's belongings, but the contents were eventually auctioned off when she was unable to pay the storage rent. She sent

Saddozai a letter ending their relationship. Saddozai did not accept this decision. He left voice messages for Doe, sometimes pleading for her to remain in the relationship and sometimes expressing anger and threats (e.g., "Listen you are going to regret this shit.. you are going to regret this.. you fucker.")

Saddozai was released from prison in February 2016 and checked into a hotel room. He called Doe to pick him up, but she refused. On February 6, after Saddozai repeatedly called and texted her requesting assistance for food and clothing, Doe agreed to meet Saddozai, and they had a conversation in her parked car. Saddozai became angry that Doe ended their relationship, struck her face, and began choking her. He grabbed her hair and neck when she tried to escape. This struggle continued for a few minutes until the police arrived after a bystander called 911. Doe told the officers she was simply having a loud, verbal argument with Saddozai. The officers told Saddozai to leave the parking lot.

A few days later, Saddozai left Doe numerous voice messages, blaming Doe for ruining his life and begging to see her again. Saddozai found Doe's address though an internet search. He used a spoofing application—a product that allows users to both manipulate the caller identification on the receiving phone and disguise the caller's voice—to call Doe. Pretending to be a police officer, Saddozai asked Doe for her address to discuss a serious event in-person, and Doe unwittingly gave it to him. After becoming suspicious of the call, she telephoned the police department, which confirmed that no one from the department had called her. Doe was afraid Saddozai learned her address, and she slept in her car that night.

3

The attack that led to this case happened the next morning, February 8, 2016. Saddozai went to Doe's apartment. He most likely entered through the balcony door while she was away. He looked through her belongings, found some men's clothing, and threw them under the bed. He picked up a bible and wrote inside the cover, "You read the Bible, [Doe], but why are you cheating on me?"

Around noon, Doe returned home, unlocked her apartment door, and immediately saw Saddozai sitting by her bed. He was angry, and said, "you're cheating" to Doe. She screamed and ran out of the apartment. Saddozai pursued Doe with a knife in his hand, yelling "you cheat" and "I'm gonna get you."

Doe ran to the apartment parking lot where she banged on the window of a car, screamed for help, and begged the driver to unlock the doors. She then ran to the apartment building's leasing office while Saddozai continued to chase her. She entered the office and tried to hold the door closed. Saddozai yelled through the door that Doe was cheating and he would get her. He tried to force the door open repeatedly, but he was unsuccessful and ran away.

Another apartment resident came to investigate the commotion and found Saddozai by the apartment complex's pool. Saddozai was holding a knife, and repeatedly warned the resident that he "had a knife" and "I want to kill the bitch." He then ran out of the apartment building gate while the other resident trailed Saddozai at a distance. Saddozai fled up a steep hill, where he disappeared in a densely wooded area out of the resident's view. Officers eventually apprehended him.

4

## B.

A jury found Saddozai guilty of attempted willful, deliberate, and premeditated murder (Pen. Code, §§ 664, 187, subd. (a)); [1] stalking (§ 646.9, subd. (a)); misdemeanor exhibiting a deadly weapon (§ 417, subd. (a)(1)); first degree burglary (§ 460, subd. (a)); misdemeanor possession of burglar's tools (§ 466 (count five)); and misdemeanor battery of a person the defendant formerly dated (§ 243, subd. (e)(1)). The jury found true enhancements for use of a deadly weapon (a knife) (§ 12022, subd. (b)(1)) and a prior serious felony (§ 667, subd. (a)(1)).

The trial court sentenced Saddozai to a term of 21 years to life on his attempted murder conviction and various enhancements, as well as an additional five-year term enhancement for a prior strike offense under section 667, subdivision (a). The trial court also imposed a consecutive sentence of 12 years for his burglary conviction but stayed punishment of Saddozai's stalking conviction.

## DISCUSSION

## A.

Saddozai argues his conviction for attempted murder is not supported by substantial evidence. After reviewing the record for substantial evidence in the light most favorable to the judgment (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11), we reject this claim.

## 1.

Murder is the unlawful killing of a human being with malice aforethought. (§ 187, subd. (a); *People v. Smith* (2005) 37 Cal.4th 733, 739 (*Smith*) ["intent" and "malice" are essentially the same concepts,

---

[1] Undesignated statutory references are to the Penal Code.

express malice requires showing assailant desired or knew to a substantial certainty that death would occur].) "Attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing." (*People v. Lee* (2003) 31 Cal.4th 613, 623.) "Because direct evidence of a defendant's intent rarely exists, intent may be inferred from the circumstances of the crime and the defendant's acts." (*People v. Sanchez* (2016) 63 Cal.4th 411, 457.) )

Here, Saddozai made his intentions clear through both his actions and words. As he chased Doe with a knife across the apartment complex, he yelled, "I'm going to get you." He tried to force his way into the office where Doe had sought refuge, despite Doe's pleas to leave her alone. Then, still in a rage, he brandished his knife to another apartment resident and angrily said he was "gonna kill that bitch." (*People v. Morales* (1992) 5 Cal.App.4th 917, 925-926 [defendant's statement of an intention to kill is sufficient to prove intent].)

Saddozai's veiled threats to Doe also support an intent to kill. (Cf. *People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1188 (*Hajek*).) Saddozai previously told Doe that she was evil, that if she was gone, no one would miss her, that "god will see that you burn in hell," and that "If I can't have you, no one will." These threats take on added meaning given the ample evidence that Saddozai was angry when Doe ended their relationship. (See *Smith*, *supra*, 37 Cal.4th at p. 742 ["where motive is shown, such evidence will usually be probative of proof of intent to kill"].) Viewing the evidence in a light most favorable to the People, a jury could reasonably conclude Saddozai's intended to kill Doe.

6

Saddozai's claim that he brought Doe flowers, evidencing his intent to reconcile with her rather than kill her, does not compel a different result. (*People v. Fierro* (2010) 180 Cal.App.4th 1342, 1347 [facts that tend to support a contrary inference does not require reversing a conviction under a review for substantial evidence].)

**2.**

Saddozai next contends he did not commit an overt act because he never stabbed Doe with the knife or got close enough to kill her.

" 'Preparation alone is not enough, there must be some appreciable fragment of the crime committed[] [and] it must be in such progress that it will be consummated unless interrupted by circumstances independent of the will of the attempter.' " (*Morales, supra*, 5 Cal.App.4th at p. 925.) But there is no requirement "that the overt act be the last possible step prior to the commission of the crime," and the cases Saddozai cites—attempted murder convictions in which defendants stabbed the victims who later survived their attacks—do not alter that principle. (*Id.* at p. 926; see, e.g., *People v. Avila* (2009) 46 Cal.4th 680, 701-702 [repeated stab wounds alone constituted substantial evidence of intent to kill]; *People v. Gonzalez* (2005) 126 Cal.App.4th 1539, 1552 [same].) Instead, when a defendant's intent is clearly shown, "slight acts [performed] in furtherance of a crime will constitute an attempt." (*Morales, supra*, 5 Cal.App.4th at p. 926.)

Here, we have more than the requisite slight acts. Saddozai chased Doe with a knife and declared his intention to kill her. (See *id.* at pp. 926–927.) He continued to pursue Doe even though she ran away. Saddozai only abandoned his efforts after Doe locked herself in the leasing office, he was unable to force his way in, and another

7

apartment resident (who Saddozai admitted terrified him) intervened. Contrary to Saddozai's assertions, his actions were not equivocal or analogous to the defendant's in *People v. Miller* (1935) 2 Cal.2d 527. (*Id.* at pp. 529, 532 [no certainty in whether defendant would carry out a threat to kill where after loading a rifle, defendant walked directly toward a third-party rather than chasing the intended victim and relinquished the rifle].) A jury could reasonably conclude that Saddozai would have completed the murder had Doe not escaped. (See *Smith, supra*, 37 Cal.4th at pp. 740-741 [abandoning efforts to kill " ' "out of necessity or fear does not compel the conclusion that he lacked the animus to kill in the first instance" ' "].)

While Saddozai points to conflicting evidence that he did not have a knife during the chase, several apartment residents saw him carrying a knife. It is the jury's job to resolve conflicts in evidence. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) There was sufficient evidence for the jury to find Saddozai took concrete steps toward killing Doe.

**B**.

Sadozzai also argues his premeditation enhancement is unsupported by the evidence because he merely wanted to reconcile with Doe and did not deliberately plan to kill her. (§ 188.) We are unpersuaded.

Premeditation requires finding the defendant decided in advance to kill, after careful thought and weighing of considerations. (*People v. Jurado* (2006) 38 Cal.4th 72, 118.) "A reviewing court normally considers three kinds of evidence to determine whether a finding of premeditation and deliberation is adequately supported—preexisting

8

motive, planning activity, and manner of killing." (*Ibid.*) Ample evidence supports these factors here.

The record shows Saddozai had a preexisting motive. Saddozai was angry and jealous towards Doe for ending their relationship. He had a history of violence with Doe, and, after his release from prison, Saddozai repeatedly told Doe that if he could not have her, no one could. He left Doe numerous voice and text messages, sometimes claiming he could not live without her and sometimes calling her an evil person who will "burn in hell" and threatening her that "When I get out of here . . when I leave this place you are going to regret it." He further blamed her for abandoning his belongings in storage and leaving him homeless. The jury could reasonably infer that Saddozai was motivated to kill Doe rather than reconcile with her, based on his failure to accept that their relationship had ended, his obsession with Doe, his past abuse of her, and his continued anger toward her.

The record also demonstrates planning. After breaking into Doe's apartment, looking through her belongings, and seeing men's clothing in her closet, Saddozai admittedly grew angry, threw the clothes on the floor and kicked them under her bed. Saddozai testified to his belief Doe was cheating on him, and he wrote "You cheat" in Doe's bible. Saddozai removed a stainless-steel knife from a kitchen drawer and placed it on the counter, while also repositioning and prominently displaying a cleaver left in the drawer. When he heard Doe open the door, Saddozai hid behind her bed. (C.f. *People v. Boyette* (2002) 29 Cal.4th 381, 435 [" '[P]roof of lying-in-wait . . . acts as the functional equivalent of proof of premeditation, deliberation and intent to kill' "].) There is sufficient evidence that the attempted attack on

9

Doe was premeditated.  (See *Jurado, supra*, 38 Cal.4th at p. 119 [reviewing evidence of concerning the manner of killing is unnecessary where evidence of motive and planning activity is sufficient].)

Saddozai again argues that he wanted to reconcile with Doe, as shown by the fact that he brought her flowers.  Saddozai simply ignores the record and our standard of review.  The flowers fit a pattern of manipulation in which Saddozai would threaten and abuse Doe, then bring her flowers, tell her she was beautiful, and promise to behave. Viewing the record in a light favorable to the prosecution, as we must, the flowers at most show that he broke into her apartment intending to manipulate, harass, or stalk her, then grew angry and formed his to kill her after he found the men's clothes. Whether he formed the plan to kill before or after entering the apartment, the record supports premeditation.

## C.

Saddozai claims his counsel was ineffective by failing to object to Doe's exclamations Saddozai was going to kill her as irrelevant and by failing to object to the prosecutor's argument that these exclamations proved Saddozai intended to kill Doe.  We disagree.

## 1.

At trial, Doe's apartment building manager, Maybelline Luz, and a driver parked in the apartment parking lot, Domingo Castrillo, both testified that Doe screamed "he's gonna kill me" while she was being chased by Saddozai.  Saddozai's trial counsel objected to these statements as hearsay.  The trial court overruled this objection and properly admitted the statements under the spontaneous statement exception.  (Evid. Code, § 1240 ["(a) Purports to narrate, describe, or

10

explain an act, condition, or event perceived by the declarant; and (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception"].)

**2.**

We reject Saddozai's argument that Doe's statement was irrelevant. Saddozai's own testimony made it relevant. He testified that Doe ran away from him, not because she thought he would kill her, but because she "got hysterical" about his previous infidelities and her daughter who died. (*Rufo v. Simpson* (2001) 86 Cal.App.4th 573, 595 [allowing evidence of state of mind where there is a legitimate disputed issue]; *People v. Garceau* (1993) 6 Cal.4th 140, 176-177 [trial court retain broad discretion when determining relevance of evidence].) Saddozai's counsel cannot be faulted for failing to make a relevance objection. (*People v. Price* (1991) 1 Cal.4th 324, 387 ["Counsel does not render ineffective assistance by failing to make motions or objections that counsel reasonably determines would be futile"].)

Nor does Saddozai demonstrate prejudice resulting from the lack of a limiting instruction. Evidence of Doe's fear of Saddozai was already presented to the jury through Luz's and Castrillo's non-hearsay observations of Doe's behavior: she was crying, screaming, and distressed while running away from Saddozai. And although Saddozai suggests the prosecutor relied on her statements to establish Saddozai's intent, the prosecutor emphasized *Saddozai's* own words, "I'm going to kill her," as "the most powerful evidence you can possibly have of what the defendant's intention was." Even assuming the jury could have viewed Doe's statements as evidence of Saddozai's intent rather than her fear, Saddozai's statements were far more damaging to his case.

11

(See *Morales*, *supra*, 5 Cal.App.4th at pp. 925-926.) The prosecutor's focus on Doe's actions—fleeing and hiding from Saddozai—and minimal reference to her statements further undermine Saddozai's claim the statements were critical to proving Saddozai's intent. We see no reasonable probability a limiting instruction or objection to the prosecutor's argument would have resulted in a better outcome for Saddozai.

## D.

Saddozai next argues that the trial court should not have admitted statements made to a 911 dispatcher by Markita Vasquez, a secretary in the leasing office who did not testify at trial. He claims the statements were inadmissible hearsay and that their admission violated his constitutional right to confront a witness under *Crawford v. Washington* (2004) 541 U.S. 36. We disagree.

### 1.

At trial, Luz testified that Doe entered the leasing office where she and Vasquez worked, screaming at the top of her lungs and pleading for assistance. Luz told her secretary, Vasquez, to call 911. On the recording with the 911 dispatcher, Vasquez relayed Doe's statements that she was being chased by her ex-boyfriend, who had a knife in his hand. Vasquez also explained, "[Doe] said she came home and he was inside of her apartment."

The trial court admitted the 911 audio recording, finding both Doe and Vasquez's statements were spontaneous exceptions to the hearsay rule. (Evid. Code, § 1240.)

12

**2.**

We will uphold the trial court's factual determinations if supported by substantial evidence. (*People v. Phillips* (2000) 22 Cal.4th 226, 236.) We review the decision to admit the evidence for an abuse of discretion. (*Ibid*.)

Substantial evidence supports the court's finding that Vasquez was under stress. (Evid. Code, § 1240 [spontaneous statement requires an event that causes nervous excitement that renders the statement spontaneous].) A startling event had just occurred: Doe ran into her office screaming for help, and Saddozai then attempted to force his way into the office. As a result, Vasquez herself was screaming, frantic, "very emotional, very afraid," and hid behind Luz's chair. In the heat of the moment, she had no reason to describe the situation falsely. (See *People v. Farmer* (1989) 47 Cal.3d 888, 903-904 [911 call properly admitted where injured declarant had little opportunity or incentive to fabricate answers to questions] (*Farmer*).)

Second, substantial evidence supports the court's finding that the statement purported to "narrate, describe, or explain an act" perceived by Vasquez. (Evid. Code, § 1240.) Saddozai points out, correctly, that Vasquez did not witness what happened between Doe and Saddozai. Saddozai mistakenly relies on *Ungefug v. D'Ambrosia* (1967) 250 Cal.App.2d 61. In *Ungefug*, there was no foundation for a spontaneous statement because the declarant—a voice in a crowd—was unidentified, and it was mere speculation whether he or she even witnessed the event. (*Id.* at p. 68.) Here, Vasquez was identified, and she directly observed Doe running into her office, falling to the ground, crying hysterically, and begging for help because Saddozai was chasing Doe

13

with a knife.  Vasquez explained that situation to the 911 operator.  (See *Farmer*, *supra,* 47 Cal.3d at pp. 904-905.)  The court did not abuse its discretion by admitting the evidence.

**3.**

We reject Saddozai's argument that Vasquez's statements to the 911 operator violated his Sixth Amendment right to confront Vasquez at trial.  We review the issue de novo.  (*People v. Nelson* (2010) 190 Cal.App.4th 1453, 1466.)

Under the Sixth Amendment to the federal Constitution, a defendant has the right to confront the witnesses against him.  (*People v. Nelson, supra,* 190 Cal.App.4th at p. 1463.)  The admission of a "testimonial" hearsay statement by a declarant who does not appear for cross-examination at trial violates the confrontation clause unless the witness is unavailable to testify at trial and the defendant had a prior opportunity to cross-examine the witness.  (*Ibid.*)  But the confrontation clause does not bar admission of hearsay statements that are not testimonial.  (*Davis v. Washington* (2006) 547 U.S. 813, 823–826 (*Davis*).)

"Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.  They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."  (*Davis v. Washington, supra,* 547 U.S. at p. 822.)

14

Vasquez's statements to the 911 operator were nontestimonial. She made the statements during an ongoing emergency. Indeed, she asked the 911 dispatcher to send police to their building because Doe ran into the office and someone was chasing her. The questions the dispatcher asked Vasquez—the name of the person pursuing Doe, Doe's relationship to the person, what kind of object Saddozai had in his hand, where was Saddozai located at the time of the call—were necessary for the police " ' "to assess the situation, the threat to their own safety . . . possible danger to the potential victim," ' " the public, and to determine whether " 'they would be encountering a violent felon.' " (*Michigan v. Bryant* (2011) 562 U.S. 344, 376.)

Saddozai claims the emergency had ended because Vasquez's call to 911 occurred after Saddozai had already left the leasing office and Doe had reached a place of safety. No reasonable person would assume the emergency had ended. Saddozai was somewhere outside, armed with a knife. There was no reason to believe he would not again try to force his way into the office, attack Doe if she left the office, or harm somebody else. (See *Michigan v. Bryant, supra,* 562 U.S. at p. 377.)

**E.**

We reject Saddozai's additional challenge to the admission of Doe's statements to a police officer as spontaneous statements.

Following the attack on February 8, an officer recorded an interview with Doe. The recording contained Doe's statements describing both the attack as well as her emotions and fears about Saddozai, Saddozai's text messages, his phone number, and emails. The prosecutor made a pre-trial motion to admit the recording as a spontaneous statement, and the trial court ruled that only those

15

statements describing the February 8 events were admissible.  The prosecutor planned to redact the recording accordingly before playing it at trial, but there is nothing in the record confirming that this happened.  At trial, the recording was played in full over Saddozai's objection.

To the extent statements exceeding the trial court's ruling were erroneously admitted, the error was not prejudicial under any standard.  (*Chapman v. California* (1967) 386 U.S.18, 24 [harmless beyond a reasonable doubt under federal standard]; *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*) [reasonable probability of a more favorable outcome under state standard].)  As before, the recorded statements duplicated testimony and evidence presented at trial.  (See *People v. Burney* (2009) 47 Cal.4th 203, 232.)  Doe's statement that she was scared when she saw Saddozai and screamed at the top of her lungs echoed her own testimony, as well as Luz's and Castrillo's.  Doe's discussion of Saddozai's daily text and voice messages simply described the frequency and number of the messages that were independently admitted into evidence.  Her statement that Saddozai knew she lived alone and her feelings of vulnerability similarly confirmed her prior testimony that she lived alone and was worried Saddozai would find her.  Saddozai attempts to demonstrate prejudice from this alleged error by rehashing his previous arguments.  We have already rejected them, and they are no more persuasive here.

**F**.

Saddozai contends the trial court erred by allowing the People to impeach him with an unsanitized description of his prior felony conviction for statutory rape (§ 289, subd. (h)) after deeming it a crime

16

of moral turpitude. (Evid. Code, § 788; *People v. Castro* (1985) 38 Cal.3d 301, 314-315 [prior felony conviction involving crimes of moral turpitude appropriately used for impeachment purposes if admissible under Evid. Code, § 352].) Resolving whether statutory rape is a crime of moral turpitude is unnecessary. Even assuming the trial court erred, it is not reasonably probable Saddozai would have obtained a more favorable result in the absence of the error. (*Castro, supra*, 38 Cal.3d at p. 319; *Watson, supra*, 46 Cal.2d at p. 836.)

The trial court instructed the jury to consider Saddozai's prior conviction for the limited purpose of evaluating his credibility, an instruction we presume the jury followed. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.) The prosecutor relied primarily on Saddozai's prior text and voice messages and letters to attack his credibility and, in arguments to the jury, emphasized Saddozai's inconsistent statements and claims that officers were fabricating evidence against him. The prosecutor questioned Saddozai only once about this prior conviction and without conveying any underlying facts.

Saddozai has not demonstrated prejudice. He says the prosecutor improperly used the offense to demonstrate he cheated on her. But he admitted—repeatedly—that he cheated on her in his own direct testimony. Given he volunteered the information, as well as the minimal attention placed on the prior conviction, the outcome would not have been more favorable had the court excluded it.

We do not examine Saddozai's claim the trial court failed to sanitize the conviction because he forfeited the issue. The trial court did not rule on Saddozai's motion for that relief, Saddozai did nothing to secure a ruling, and that failure precludes him from now raising the

17

issue on appeal. (*People v. Brewer* (2000) 81 Cal.App.4th 442, 461 [failure to secure ruling on a motion waives the issue on appeal].) Saddozai's theory that this failure constituted ineffective assistance of counsel, belatedly raised in his reply brief, also fails because, for the reasons set forth above, he cannot demonstrate any prejudice. (See *People v. Kipp* (1998) 18 Cal.4th 349, 366.)

## G.

Saddozai claims the trial court erroneously admitted evidence of his uncharged acts of domestic violence against Doe. We disagree.

## 1.

While evidence of prior criminal acts is ordinarily inadmissible to show a defendant's criminal disposition, there are specific exceptions in cases involving domestic violence. (Evid. Code, §§ 1101, subd. (a), 1109, subds. (a), (b), (d)(3); § 13700, subds. (a), (b) ["domestic violence" includes abuse—intentional or reckless causing of bodily injury or placing person in reasonable apprehension of serious bodily injury—committed against a former girlfriend].) "[I]n a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352." (Evid. Code, §§ 1109, subd. (a)(1), 352.) The trial court must determine whether the probative value of the evidence is " 'substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' " (*People v. Kerley* (2018) 23 Cal.App.5th 513,

18

531–532.)  We review this determination for an abuse of discretion.
(*Ibid*.)

**2**.

Before trial, the prosecutor moved to admit testimony about
Saddozai's prior acts of domestic violence dating back to 2000 against
Doe and a previous girlfriend.  (See Evid. Code, §§ 352, 1101, subd. (b),
1109.)  The trial court excluded the uncharged acts against Saddozai's
previous girlfriend because they were greater than ten years old and
inadmissible under section 352.  But relying on Evidence Code section
1109 and *People v. Zack* (1986) 184 Cal.App.3d 409, it allowed evidence
of prior violence between Saddozai and Doe.  (*Id*. at p. 415 [evidence of
prior assaults is admissible "when offered on disputed issues, e.g.,
identity, intent, motive, etcetera. . . based solely upon the consideration
of identical perpetrator and victim without resort to a 'distinctive
modus operandi' analysis of other factors"].)

**3**.

Challenging this ruling, Saddozai contends the prior acts—
repeated slapping, punching, kicking Doe, knocking out her teeth—bore
little similarity to his charged offenses.  But admissibility under
Evidence Code section 1109 does not require a high degree of similarity
between the prior acts and charged offenses.  (Cf. *People v. Frazier*
(2001) 89 Cal.App.4th 30, 40-41 [interpreting Evid. Code, § 1108
similar statutory language authorizing propensity language in sexual
offense cases].)  Here, the violent acts showed Saddozai's continuous
pattern of abuse, indicating his motive and intent to hurt Doe and
demonstrating his propensity to violently attack her.  They were
further useful for the jury to evaluate the conflicting testimony (and

19

related witness credibility) about why she ran from Saddozai, as well as Saddozai's testimony that he simply wanted to reconcile with Doe. (C.f. *Zack*, *supra*, 184 Cal.App.3d at p. 415 [defendant "not entitled to have the jury determine his guilt or innocence on a false presentation that his and the victim's relationship and their parting were peaceful and friendly"].)

Contrary to Saddozai's assertions, his prior conduct was not too remote in time to lack any probative value. (*People v. Daniels* (2009) 176 Cal.App.4th 304, 316.) For example, Saddozai challenges the admission of a 2013 incident in which he cut off all of Doe's hair. However, this occurred three years before the charged offenses, and therefore fell within the 10-year statutory limit for admitting this evidence. (See Evid. Code, § 1109, subd. (e).) To the extent that Saddozai further claims there was a significant gap between his prior attacks in 2015 and the current offense, it may be partially explained by the fact that he was in prison or the Philippines in the interim. (See *People v. Daniels*, *supra*, 176 Cal.App.4th at pp. 316-317 [15-year gap between prior act and charge offense not too remote where defendant incarcerated for significant portion of that time].)

The damage to Saddozai's case from these prior acts, particularly kicking her down the stairs while she was pregnant, does not make this evidence unduly prejudicial or inflammatory. (See *People v. Daniels, supra,* 176 Cal.App.4th at p. 317 [evidence is unduly prejudicial if it tends to evoke emotional bias against the defendant with little effect on the issues].) This prior attack was highly probative of whether Saddozai intended to assault or kill her and his capacity to do so. (C.f. *Zack*, *supra*, 184 Cal.App.3d at p. 415 [inferring intent to kill based on

20

past domestic violence against the same victim].) The trial court did not abuse its discretion admitting this evidence and did not violate Saddozai's due process rights. (*People v. Brown* (2003) 31 Cal.4th 518, 545 [the "routine application of state evidentiary law does not implicate defendant's constitutional rights"].)

**H.**

We also reject Saddozai's challenges to the admission of expert testimony on intimate partner battering.

**1.**

Before trial, the prosecutor proposed Sergeant Linda Gibbons as an expert witness to testify about intimate partner battering to help the jury understand the effects of physical abuse in domestic violence and victim behavior. The trial court agreed, granted the prosecutor's request, and later overruled Saddozai's objection to Gibbons' qualifications as an expert. Saddozai contends the trial court abused its discretion by allowing Gibbons to testify as an expert witness because she had no relevant qualifications, such as a degree in psychology. (*People v. Wallace* (2008) 44 Cal.4th 1032, 1062-1063 (*Wallace*) [rulings on proposed expert qualifications reviewed for an abuse of discretion].) This argument lacks merit.

Witnesses may testify as experts if they have "special knowledge, skill, experience, training, or education sufficient to qualify" them, as demonstrated through "any otherwise admissible evidence" including their own testimony. (Evid. Code, § 720, subds. (a), (b).) Gibbons testified to her extensive training and experience in domestic violence cases—her position as a detective sergeant, her work on approximately one thousand domestic violence cases, her supervision of a bureau

21

investigating sexual assault and domestic violence cases, and her qualification as an expert in intimate partner battering in ten prior court cases. (See *People v. Williams* (1997) 16 Cal.4th 153, 195 [previous testimony as an expert is a factor supporting qualification as an expert witness].) The trial court acted well within its broad discretion by finding her "more than qualified" to testify as an expert witness. (Compare with *Miller v. Los Angeles County Flood Control Dist.* (1973) 8 Cal.3d 689, 701 [witness not qualified as an expert where he lacked any familiarity and close involvement with practices at issue.)

Gibbons' lack of a degree in psychology is not fatal to her expert qualifications. (See *Wallace, supra*, 44 Cal.4th at pp. 1062-1063.) As Saddozai acknowledges, a person may qualify as an expert through experience. Complaints about the degree of an expert's knowledge is an issue of weight, rather than admissibility. (*People v. Bolin* (1998) 18 Cal.4th 297, 322.) Gibbons disclosed that she did not have any formal degree, and the jury was entitled to accord her testimony the appropriate weight.

**2.**

Saddozai next claims intimate partner battering testimony was irrelevant, and its admission violated his rights to due process. We find no abuse of discretion. (*People v. Lindberg* (2008) 45 Cal.4th 1, 45 [standard of review for admitting expert testimony]; *People v. Heard* (2003) 31 Cal.4th 946, 973.)

Expert testimony on "intimate partner battering and its effects, including the nature and effect of physical, emotion, or mental abuse on the beliefs, perceptions, or behavior of victims of domestic violence" is

admissible if there is sufficient evidence that intimate partner battering applies to the person involved, and the testimony is probative of a contested issue.  (Evid. Code, § 1107, subd. (a); *People v. Gadlin* (2000) 78 Cal.App.4th 587, 592.)  It is not, as Saddozai suggests, only admissible to address circumstances where a victim has recanted prior statements about abuse at trial and reunited with the batterer. (*People v. Morgan* (1997) 58 Cal.App.4th 1210, 1214.)  Rather, the testimony is generally relevant and admissible "to explain that it is common for people who have been physically and mentally abused to act in ways that may be difficult for a layperson to understand." (*People v. Riggs* (2008) 44 Cal.4th 248, 293.)  And courts admit this evidence to address juror opinions about a victim's credibility based on commonly held misconceptions about victims—that severely abused victims would not remain with their abusers.  Doe remained in the relationship despite the violence, covered up her injuries with make-up, and did not report these incidents to her co-workers, friends, or medical professionals when she sought treatment for some of her injuries.  After Saddozai choked and punched her in her car, she told police they were only having a loud, verbal argument.  However, her trial testimony on this incident described physical violence.

A jury could have concluded that Doe was lying about her abusive relationship with Saddozai, and the trial court appropriately found Doe's conduct counterintuitive for the jury to understand.  (See *Brown*, *supra*, 33 Cal.4th at p. 906 ["When the trial testimony of an alleged victim of domestic violence is inconsistent with what the victim had earlier told the police, the jurors may well assume that the victim is an untruthful or unreliable witness"].)  Saddozai's counsel fostered these

23

misconceptions by questioning Doe about her failure to leave Saddozai after severe incidents of physical abuse. In his closing argument, Saddozai's counsel claimed Doe stayed with Saddozai despite some "very horrendous type[s] of abuse" because "perhaps it wasn't as bad as she wanted. . . to make us believe . . . This was somebody choosing to go back and acting logically, which means pass[ing] doubt on the description she's given here in this court." Gibbons' testimony that victims often experience a cycle of violence—praise and abuse by their batterers—and frequently remain with abusers because they fear additional violence informed the jury that Doe's behavior was not unusual. She further explained victims are also too embarrassed to tell others about the abuse and go to great lengths to hide it. This testimony accurately explained Doe's behavior, and admitting this testimony was not an abuse of discretion or violate his due process rights. (See *Brown*, *supra*, 31 Cal.4th at p. 545.)

## I.

Saddozai claims section 654 barred the court from imposing a consecutive sentence for his burglary offense because it involved the same course of conduct as his attempted murder offense, for which he received an indeterminate sentence. We disagree.

Section 654 "precludes multiple punishment for a single act or omission, or an indivisible course of conduct." (*People v. Deloza* (1998) 18 Cal.4th 585, 591; § 654, subd. (a) [where an act is "punishable in different ways by different provisions of law, . . . in no case shall the act . . . be punished under more than one provision"].) If the offense "involves more than a single act—i.e., a course of conduct," we assess whether that conduct reflects a single or multiple intents and

24

objectives.  (*People v. Corpening* (2016) 2 Cal.5th 307, 311-312.)  " 'If [a defendant] entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' "  (*People v. Leonard* (2014) 228 Cal.App.4th 465, 499.)  A trial court has broad latitude when determining whether section 654 applies, and we review its decision in the light most favorable to the respondent.  (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

Substantial evidence supports the court's finding Saddozai's conduct underlying his burglary offense and attempted murder are divisible.  (See *People v. Jones, supra,* 103 Cal.App.4th at p. 1143 ["findings will not be reversed on appeal if there is any substantial evidence to support them"].)  The court reasonably concluded Saddozai completed his burglary offense when Saddozai entered Doe's apartment with the intent to stalk her.  (§ 646.9, subd. (e) [identifying elements for stalking]; *People v. Munguia* (2016) 7 Cal.App.5th 103, 111.)  Saddozai engaged in a sophisticated plan to find her apartment, and used a spoofing application to impersonate a police officer to verify Doe's undisclosed address.  He broke into Doe's apartment through the balcony door to torment her, demonstrated through his daily threatening voice and text messages.  At one point, Saddozai texted his cousin to seek advice about how to confront Doe about potentially cheating on him.

The evidence supports a finding that, once inside the apartment, Saddozai changed his plan.  The attempted murder occurred after

Saddozai spent several hours in Doe's apartment, became enraged by finding men's clothing in her closet, and armed himself with a knife from the kitchen. Separate punishments for Saddozai's burglary and attempted murder offenses was appropriate under these circumstances.

**J.**

We reject Saddozai's claim the trial court abused its discretion by refusing to strike his prior 2002 conviction under section 1385 and *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, for sentencing purposes. (*People v. Carmony* (2004) 33 Cal.4th 367, 378 [abuse of discretion standard applies to trial court's refusal to strike the prior felony conviction allegation].)

The Three Strikes initiative established sentencing requirements "to be applied in every case where the defendant has at least one qualifying strike"—a prior serious and/or violent felony—unless the sentencing court concluded that, for articulable reasons, the defendant fell outside of the Three Strikes scheme. (*People v. Strong* (2001) 87 Cal. App.4th 328, 337.) Section 1385 permits trial courts to strike a prior felony conviction for sentencing purposes under the Three Strikes law. (*Romero, supra,* 13 Cal.4th at p. 504; § 1385, subd. (a) [court may "order an action to be dismissed. The reasons for the dismissal shall be stated orally on the record"].) When exercising this discretion, the court must consider "whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

The trial court properly considered these factors before refusing to strike Saddozai's prior conviction. (See *People v. Carmony*, *supra,* 33 Cal.4th at p. 378 [finding abuse of discretion if the trial court considered impermissible factors when declining to dismiss a prior felony or being unaware of its discretion].) It acknowledged Saddozai's 2002 conviction occurred when he was younger but found Saddozai did not have a "legally blameless life in the interim," highlighting his continuous pattern of committing offenses, false imprisonment in a crime involving sexual assault in 2005, and sexual penetration of a minor in 2015. Significantly, Saddozai committed the offenses at issue while on parole, mere days after leaving prison. In terms of Saddozai's character, the trial court found Saddozai engaged in remorseless conduct that flouted the rights of others and the criminal justice system, including absconding to the Philippines during the prosecution for his 2015 offense and repeatedly violating restraining orders. The trial court's ruling finding Saddozai well within the scope of the Three Strikes law was not an abuse of discretion. (*Ibid.* [affirming refusal to strike " '[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law' "].)

## K.

The parties agree that Saddozai is entitled to remand for resentencing so the trial court can consider striking the five-year sentencing term for his prior felony enhancement under section 667, subdivision (a). (See § 667, subd. (a); former § 1385, subd. (b); Stats. 2018, ch. 1013, § 2, effective January 1, 2019 [eliminating statutory prohibition on striking or dismissing prior serious felony conviction for

sentencing purposes].)  The change in law applies retroactively to judgments of conviction, like Saddozai's, that were not final by January 1, 2019.  (*People v. Dearborne* (2019) 34 Cal.App.5th 250, 268.)  We agree remand is necessary here.

## L.

Saddozai contends the cumulative effect of errors deprived him of due process and a fair trial.  (*People v. Williams* (2009) 170 Cal.App.4th 587, 646 [review of each alleged error to assess cumulative effect and whether jury would have rendered more favorable verdict in their absence].)  Any identified or perceived errors were not prejudicial, either individually or cumulatively, and do not warrant reversal of the judgment.

## DISPOSITION

The convictions are affirmed. We remand to allow the trial court to determine whether to exercise its discretion to strike the prior serious felony enhancement imposed under Penal Code section 667, subdivision (a).

_____
BURNS, J.

We concur:

_____
SIMONS, ACTING P.J.

_____
SELIGMAN, J.*

A154894

* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.